UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                  :

DARNELL GREATHOUSE,
                                                  :

                 Plaintiff,                         11 Civ. 7845 (PAE) (GWG)
                                                  :

        -v.-                                  REPORT AND RECOMMENDATION
                                                  :

JHS SECURITY, INC. and MELVIN WILCOX,
                                                  :

                 Defendants.
                                                  :
-------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

       Plaintiff Darnell Greathouse brings this action against defendants JHS Security, Inc.

("JHS") and Melvin Wilcox to recover unpaid wages and other damages arising out of the

defendants' violations of the New York Labor Law ("NYLL") and the Fair Labor Standards Act

("FLSA"). A default judgment has already been entered against defendants. The only remaining

issue is the amount of damages Greathouse is due.

I.       <u>BACKGROUND</u>

       A.      <u>Procedural Background</u>

       Greathouse filed a complaint on November 2, 2011, <u>see</u> Complaint, filed Nov. 2, 2011

(Docket # 1) ("Compl."), which he served on JHS on November 28, 2011, <u>see</u> Affidavit of

Service, filed Dec. 7, 2011 (Docket # 2), and on Wilcox on January 9, 2012, <u>see</u> Affidavit of

Service, filed Jan. 24, 2012 (Docket # 8). Defendants did not file an answer. The Clerk of Court

issued a certificate of default against JHS on February 10, 2012, and against Wilcox on February

24, 2012. <u>See</u> Clerk's Certificate of Default, filed Feb. 10, 2012 (Docket # 13); Clerk's

Certificate of Default, filed Feb. 24, 2012 (Docket # 14). On March 15, 2012, the district court

ordered that a default judgment be entered against defendants. <u>See</u> Order, filed Mar. 15, 2012

(Docket # 15).

Because the default establishes defendants' liability, see, e.g., Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995), the only issue remaining is whether plaintiffs have supplied adequate proof of their damages.  See GAKM Res. LLC v. Jaylyn Sales Inc., 2009 WL 2150891, at *2 (S.D.N.Y. July 20, 2009) ("A default judgment that is entered on the well-pleaded allegations in a complaint establishes a defendant's liability, and the sole issue that remains before the court is whether the plaintiff has provided adequate support for the relief it seeks.") (citations omitted); accord Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993).  The Second Circuit has held that an inquest into damages may be held on the basis of documentary evidence alone, "as long as [the court has] ensured that there was a basis for the damages specified in [the] default judgment." Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989); accord Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991), cert. denied, 503 U.S. 1006 (1992).  Plaintiffs' submissions include affidavits and documentary evidence.  See Declaration of Darnell Greathouse, filed May 8, 2012 (Docket # 23) ("Greathouse Decl."); Declaration of Penn Dodson, filed May 8, 2012 (Docket # 24) ("1st Dodson Decl.); Declaration of Penn Dodson, filed May 8, 2012 (Docket # 25) ("2d Dodson Decl.).  Because these submissions provide a basis for an award of damages, no evidentiary hearing is required.

     B.    Facts Relating to Liability

In light of defendants' default, the Court accepts as true the well-pleaded allegations contained in Greathouse's complaint, with the exception of those allegations relating to damages.  See, e.g., Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs.

2

LLC, 665 F. Supp. 2d 434, 436 (S.D.N.Y. 2009) ("When the Court enters a default judgment, as regards liability it must accept as true all of the factual allegations of the complaint, but the amount of damages are not deemed true.  The Court must conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.") (citations, brackets, and internal quotation marks omitted).  The following findings of fact are based on the allegations in the complaint regarding liability and the admissible evidence regarding damages in plaintiffs' submissions.

JHS is a company that provides security services in New York State, see Compl. ¶¶ 1, 7, and which, from 2006 through 2011, had annual gross revenues in excess of $500,000, id. ¶ 8. Greathouse was employed with JHS as a security guard from September 2006 to October 14, 2011.  Id. ¶ 21.  Wilcox is both the president of JHS and an owner of the company.  Id. ¶¶ 12, 16–17.  Wilcox "actively participated in the business of the corporation" and "exercised substantial control over the functions of the company's employees including [Greathouse]."  Id. ¶¶ 13, 14.  Greathouse regarded Wilcox as his "boss."  Greathouse Decl. ¶ 4.

Greathouse's nominal rate of pay ranged from $7.50 to $8.50 per hour for work performed on weekdays and $16.50 per hour for work performed on Saturdays or Sundays.  Id. ¶ 6.  Greathouse worked approximately 56 to 60 hours per week.  Id. ¶ 9.  Greathouse was never given additional compensation beyond his ordinary rate of pay when he worked in excess of 40 hours in a particular week.  Id. ¶ 19.  Greathouse received pay stubs accompanying his paychecks only for a brief period of time.  Id. ¶ 20.  Except for that period, he did not receive any pay stubs.  Id.  Defendants rarely permitted him to take breaks during his shifts.  Id. ¶ 10. JHS deducted money from Greathouse's wages for various reasons on multiple occasions. See id. ¶¶ 11–14.  On occasion, Greathouse worked days of longer than 10 hours but did not

receive compensation beyond his ordinary rate of pay on those days.  Id. ¶¶ 15–17.

Greathouse received no compensation at all for some of the weeks that he worked for

JHS.  Id. ¶¶ 21, 23.  Wilcox regularly promised Greathouse that his outstanding paychecks

would be forthcoming, but these promises were never fulfilled.  Id. ¶ 24.  On October 14, 2011,

Greathouse complained to Wilcox that he had not received a paycheck in several months.  Id.

¶ 25.  Wilcox responded, "I'll pay you when I feel like it," and then "pulled a gun on

[Greathouse]."  Id. ¶ 26.  "When Mr. Wilcox pulled the gun on [Greathouse] . . . [Greathouse]

considered that to be the end of [his] employment with JHS."  Id. ¶ 28.  Greathouse left the

premises immediately.  Id. ¶ 27.

II.    DISCUSSION

A.    Status of Defendants as Greathouse's "Employers"

1.    FLSA Standard

The FLSA imposes liability on the "employer" of any employee who is subjected to the

employer's violations of the FLSA's minimum wage, overtime, and retaliation provisions.  See

29 U.S.C. §§ 216(b), (e)(2).  The FLSA's definition of "employer" applies to "an individual,

partnership, association, corporation, business trust, legal representative, or any organized group

of persons."  See id. §§ 203(a), (d).  The FLSA defines "employer" as an entity "acting directly

or indirectly in the interest of an employer in relation to an employee."  Id. § 203(d).

The definition of "employ" under the FLSA "includes to suffer or permit to work."  Id.

§ 203(g).  An employment relationship exists under the FLSA when the "economic reality" is

such that the "alleged employer possessed the power to control the workers in question."

Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999) (citing cases).  A person or

entity need not possess "formal control" over a worker to qualify as an employer; the person or

4

entity may simply exercise "functional control" over the worker in question.  <u>Zheng v. Liberty Apparel Co.</u>, 355 F.3d 61, 72 (2d Cir. 2003).

Factors relevant to determining control over a worker's employment include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  <u>Herman</u>, 172 F.3d at 139 (quoting <u>Carter v. Dutchess Cmty. Coll.</u>, 735 F.2d 8, 12 (2d Cir. 1984)).  "No one of the four factors standing alone is dispositive."  <u>Id.</u> (citing <u>Brock v. Superior Care, Inc.</u>, 840 F.2d 1054, 1059 (2d Cir. 1988)).  The existence of all four indicia of employment "can be sufficient to establish employer status."  <u>Zheng</u>, 355 F.3d at 69 (emphasis omitted).  However, employer status does not require the existence of all four, and a court should consider "any other factors it deems relevant."  <u>Id.</u> at 69, 71–72.

> 2.   <u>NYLL Standard</u>

The NYLL's definition of employment is nearly identical to the FLSA's.  <u>Compare</u> 29 U.S.C. § 203(g) ("'Employ' includes to suffer or permit to work."), <u>with</u> N.Y. Lab. Law § 2(7) ("'Employed' includes permitted or suffered to work."); <u>see also</u> <u>Garcia v. La Revise Assocs. LLC</u>, 2011 WL 135009, at *5 (S.D.N.Y. Jan. 13, 2011) ("New York's 'employer' provisions are equally [as] broad [as the FLSA's].") (citing <u>Spicer v. Pier Sixty LLC</u>, 269 F.R.D. 321, 335 n.13 (S.D.N.Y. 2010)).  As a result, courts in this circuit "hold that the New York Labor Law embodies the same standards for joint employment as the FLSA."  <u>Chen v. St. Beat Sportswear, Inc.</u>, 364 F. Supp. 2d 269, 278 (E.D.N.Y. 2005) (citing cases); <u>accord</u> <u>Spicer</u>, 269 F.R.D. at 335 n.13 ("Courts have interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA.") (quoting <u>Jiao v. Chen</u>, 2007 WL 4944767,

at *9 n.12 (S.D.N.Y. Mar. 30, 2007)) (brackets omitted); <u>Ansoumana v. Gristede's Operating</u>
<u>Corp.</u>, 255 F. Supp. 2d 184, 189 (S.D.N.Y. 2003) ("Because New York Labor Law and the
FLSA embody similar standards," the court will "consider the federal law in deciding whether
defendants were joint employers.") (citing cases).  Accordingly, this Court's conclusions with
respect to each defendant's status as an employer under the FLSA apply equally to that
defendant's status as an employer under the NYLL.

### 3.     Status of JHS as Employer

Greathouse alleged in the complaint that JHS was his employer from September 2006 to
October 14, 2011.  <u>See</u> Compl. ¶¶ 10, 21.  Greathouse performed work as a security guard in
furtherance of JHS's business and at the direction of JHS.  <u>Id.</u> ¶¶ 1, 21; <u>accord</u> Greathouse Decl.
¶¶ 2–3.  JHS controlled Greathouse's pay, including, for example, by making deductions from
his paycheck.  <u>See</u> Greathouse Decl. ¶¶ 11–14.  It also employed Wilcox, who gave Greathouse
direction as to his employment.  <u>Id.</u> ¶¶ 4, 5, 14.  Thus, JHS exercised sufficient control over
Greathouse's work to qualify as his employer.

### 4.     Status of Wilcox as Employer

Greathouse alleges that Wilcox was also Greathouse's employer throughout the period of
Greathouse's employment with JHS, <u>see</u> Compl. ¶ 15, and the record supports this assertion.
Greathouse regarded Wilcox as his "boss."  Greathouse Decl. ¶ 4.  Wilcox was the president and
an owner of JHS, <u>id.</u> ¶ 5; was actively involved in JHS's business, Compl. ¶ 13; made promises
to plaintiff regarding his pay, <u>id.</u> ¶ 24, and "exercised substantial control over the functions of
the company's employees, including [Greathouse]," <u>id.</u> ¶ 14.  Wilcox therefore exercised
sufficient control over Greathouse's work to qualify as his employer.

B.    Overtime Wages

Both the FLSA and the NYLL require that non-exempt employees receive a wage at least equal to 150% of their regular rate of pay for those hours worked in excess of 40 hours per workweek.  See 29 U.S.C. § 207(a); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2. Greathouse worked more than 40 hours during some weeks of his employment, and defendants failed to pay him at least 150% of his regular rate of pay for those hours worked in excess of 40. See Greathouse Decl. ¶¶ 9, 19.  Therefore, defendants are liable under both federal and New York State law to Greathouse for back-pay to the extent that defendants failed to pay him the proper overtime rate.

Greathouse testified that he worked between 56 and 60 hours per week at JHS.  Id. ¶ 9. However, Greathouse asks that the Court calculate damages using a more conservative estimate of 50 hours per week.  See Proposed Findings of Fact and Conclusions of Law Granting Default Judgment, filed May 8, 2012 (Docket # 22) ("Proposed Findings") at 7.  The Court will accept this lesser figure.

Greathouse worked from September 2006 to October 14, 2011.  See Greathouse Decl. ¶¶ 2, 25–28.  Greathouse contends that he worked for 267 total workweeks, see Proposed Findings at 7, which assumes that Greathouse's start date fell in the first week of September 2006.  Greathouse bears the burden of proving the number of hours he worked, see, e.g., Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686–87 (1946), and has presented evidence that he began working at some point in September 2006, see Greathouse Decl. ¶ 2 ("I worked as a security guard for JHS Security for over five years, from September, 2006 to October 14, 2011.").  But he has presented no evidence that he began working at JHS any earlier than September 30, 2006.  See id.  The Court therefore finds September 30, 2006 to be Greathouse's

start date with JHS and finds that Greathouse worked at JHS for 263 workweeks until October 14, 2011.

Greathouse states that his hourly rate of pay was "between" $7.50 and $8.50 per hour for work performed on weekdays and $16.50 for work performed on Saturday or Sunday.  Id. ¶ 6. Greathouse is willing to assume that his hourly rate of pay was $7.50 for all hours worked. Proposed Findings at 6–7.  With this rate defendants should have paid Greathouse $412.50 per week (($7.50/hour x 40 hours) + ($7.50 x 1.5 x 10 hours)) .  Defendants instead paid Greathouse "straight time" for the hours he worked.  Greathouse Decl. ¶ 19 ("I was paid at a straight time rate; I was never paid at a rate of time-and-a-half, no matter how many hours I had been working in a week.").  Using the $7.50 rate, Greathouse received $375 per week ($7.50/hour for 50 hours).  The overtime premium Greathouse was due was therefore $37.50 per week, or the difference between the $412.50 he was owed and the $375 he received.  Therefore, defendants owe Greathouse $9,862.50 in unpaid overtime over 263 weeks.

      C.    Unpaid and Tardy Wages

Greathouse's proposed findings state that he "was not paid at all for 15% of his paychecks (or 40 weeks, including the last 12 weeks of work about which he was complaining when Defendant Wilcox pulled the gun on him), and that when he was paid he was paid late 50% of the time."  See Proposed Findings at 7.  However, Greathouse presents no competent evidence supporting the assertion either that he received late paychecks 50% of the time or that he was never paid at all 15% of the time.  Greathouse's declaration states only that he was not paid for "a number of workweeks" and that he was "more often than not" paid late.  Greathouse Decl. ¶¶ 21–23.  The time period of the lateness of the payment is not specified, however. Plaintiff's counsel asserts that "[f]or the purposes of estimation," she "will assume" that

Greathouse was not paid at all for 15% of his paychecks (or 40 weeks, including the last 12 weeks of work), and that when he was paid, he was paid late 50% of the time." 1st Dodson Decl. ¶ 34. These assertions do not reflect counsel's personal knowledge and counsel does not state the basis of her purported knowledge of these facts. Thus, the evidence is insufficient to allow a finding that Greathouse did not receive paychecks for 12 weeks. At best, Greathouse has shown that he was not paid for his last week of work, Greathouse Decl. ¶ 23, and one more week, given that Greathouse refers to his not having been paid for a number of "workweeks" in the plural, id. ¶ 21.

With respect to the issue of whether he was paid late, see generally Cuzco v. Orion Builders, Inc., 262 F.R.D. 325, 333 (S.D.N.Y. 2009) ("'Although the FLSA does not explicitly require that wages be paid on time, the courts have long interpreted the statute to include a prompt payment requirement.'") (quoting Rogers v. City of Troy, 148 F.3d 52, 57 (2d Cir. 1998)), there is no evidence as to how late Greathouse was paid either in general or as to any particular workweek. Accordingly, no damages can be awarded based on the delay in payment of wages.

Because the evidenced supports a finding that Greathouse was not paid for two workweeks, he is entitled $825.00 in damages based on unpaid wages.

D.     Spread of Hours Payments

Under the NYLL, an employee must "receive one hour's pay at the basic minimum hourly wage rate" for each workday in which the "spread of hours" of the employee's workday exceeds ten hours. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-3.4(a). New York defines "spread of hours" as "the length of the interval between the beginning and end of an employee's workday," which "includes working time plus time off for meals plus intervals off duty." Id.

9

§ 146-1.6.  Here, defendants did not provide Greathouse with this "spread of hours" compensation when his workday exceeded ten hours.  Compl. ¶ 48.  The proposed findings of fact state that Greathouse worked longer than ten hour days twice per week.  See Proposed Findings at 8.  For this proposition, however, the proposed findings cite to a spreadsheet annexed to 1st Dodson Decl., which, according to plaintiff's counsel, represents "a valuation of the damages to which he is entitled."  1st Dodson Decl. ¶ 21; see also Spreadsheet (annexed as Ex. G to 1st Dodson Decl.).  However, the unsworn statements contained in the spreadsheet, which was evidently prepared for the purposes of the instant motion, do not represent competent evidence as to the facts contained therein.  Greathouse has not submitted any other evidence that indicates the frequency with which he worked days longer than ten hours.  His own declaration states only that he worked more than ten hours "on at least some workdays."  Greathouse Decl. ¶ 15.  This phrase is even vaguer than the reference to a "number of workweeks" discussed above, and it gives no indication as to when these workdays may have occurred, which is information the Court would need to determine the applicable minimum wage rate.  Therefore, the Court finds there to be no support for Greathouse's request for spread of hours damages.

    E.    Deductions from Wages

    NYLL § 193(1) provides that "[n]o employer shall make any deduction from the wages of an employee," unless such deductions "(a) are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency; or (b) are expressly authorized in writing by the employee and are for the benefit of the employee."  Greathouse has alleged that defendants deducted (1) $25 from his pay on one occasion as punishment for his leaving his position to purchase food, Greathouse Decl. ¶¶ 10–11; (2) $1750 for "missing tools," id. ¶ 12; (3) unspecified deductions, which purportedly paid for Greathouse's health insurance, although

Greathouse did not believe he actually was insured, id. ¶ 13; and (4) periodic $15 deductions for costs related to Greathouse's work uniform, id. ¶ 14.  These allegations reflect a violation of NYLL § 193(1).

Greathouse requests $2000 of compensatory damages for these violations.  See Proposed Findings at 7–8.  The evidence Greathouse puts forth as to the extent of these damages only supports an award of $1805, however.  This sum consists of the $1750 and $25 deductions and two $15 uniform-related deductions.  Greathouse presents no competent evidence as to the frequency of the uniform deductions, other than that the $15 deductions occurred "periodically." See Greathouse Decl. ¶ 14.  We will accept that this assertion supports a finding that $15 fees were assessed at least twice.  Greathouse presents no evidence as to the amount of the deductions defendants assessed against his paychecks for health insurance.  Therefore, the Court makes no award for any such deductions.  Accordingly, Greathouse is entitled to $1805 as compensatory damages for defendants' violations of NYLL § 193.

F.     Liquidated Damages Under the NYLL

Greathouse has requested liquidated damages for unpaid wages and overtime compensation pursuant to NYLL § 198(1-a).  See Proposed Findings at 10–11.  An employer who violates the overtime provisions of the NYLL is liable to the underpaid employees for 100% of the unpaid wages as liquidated damages, in addition to back-pay, "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." N.Y. Lab. Law § 198(1-a); accord id. § 663(1) ("If any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover, . . . unless the employer proves a good faith basis that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one

hundred percent of the total of such underpayments found to be due.").  There is no evidence
suggesting that defendants acted in good faith.  Therefore, in addition to back-pay, defendants
owe Greathouse $10,687.50 as liquidated damages.[1]

      G.     Liquidated Damages Under the FLSA

      In addition to the liquidated damages award under the NYLL, Greathouse seeks an
additional 100% as liquidated damages under the FLSA.  See Proposed Findings at 9–10.
District courts have disagreed on the question of whether a plaintiff may recover liquidated
damages under both the FLSA and the NYLL for the same violations.  Compare Paz v. Piedra,
2012 WL 121103, at *12 (S.D.N.Y. Jan. 12, 2012) (awarding liquidated damages only under one
statute when the FLSA and the NYLL offered equal amounts of recovery), Alejo v. Darna Rest.,
2010 WL 5249383, at *5 (S.D.N.Y. Dec. 17, 2010) (awarding liquidated damages only under the
statute that offered greater recovery when the FLSA and the NYLL overlapped), modified on
other grounds, 2011 WL 165413 (S.D.N.Y. Jan. 18, 2011), Chan v. Sung Yue Tung Corp., 2007
WL 313483, at *28–29 (S.D.N.Y. Feb. 1, 2007) (same), Jin v. Pac. Buffet House, Inc., 2009 WL
2601995, at *9 (E.D.N.Y. Aug. 24, 2009) (same), and Yin v. Kim, 2008 WL 906736, at *1, 7
(E.D.N.Y. Apr. 1, 2008) (same), with Wicaksono, 2011 WL 2022644, at *7 (awarding liquidated
damages for same violations under both the NYLL and the FLSA), and Dong v. CCW Fashion,
Inc., 2009 WL 884680, at *4 (S.D.N.Y. Feb. 19, 2009) ("In addition to actual damages, plaintiffs

---

[1] The Court awards liquidated damages under the NYLL rather than the FLSA because
prejudgment interest is not recoverable under the FLSA where liquidated damages are awarded,
see, e.g., Brock v. Superior Care, Inc., 840 F.2d 1054, 1064 (2d Cir. 1988), but prejudgment
interest is available under the NYLL even where liquidated damages are awarded, see, e.g., N.Y.
Lab. Law §§ 198(1-a), 663(1); Wicaksono v. XYZ 48 Corp., 2011 WL 2022644, at *8 (S.D.N.Y.
May 2, 2011) (awarding prejudgment interest and NYLL liquidated damages on NYLL spread-
of-hours claims).

may recover liquidated damages under the FLSA and New York State law for the same minimum wage and overtime violations.").  As this Court explained in Paz, employees are not entitled to recover liquidated damages under both the NYLL and the FLSA because "[l]iquidated damages under both statutes 'compensate the exact same harm – namely, the harm caused by the defendant's culpable state of mind,'" 2012 WL 121103, at *12 (quoting Yin, 2008 WL 906736, at *7) (brackets omitted).  Therefore, Greathouse may not recover liquidated damages under the FLSA on his unpaid overtime claims.

      F.    <u>Prejudgment Interest</u>

     A plaintiff who prevails on an NYLL wage claim may recover prejudgment interest on any underpayment of wages.  <u>See</u> N.Y. Lab. Law §§ 198(1-a), 663(1); <u>Wicaksono</u>, 2011 WL 2022644, at *8; <u>Lin v. Hayashi Ya II, Inc.</u>, 2009 WL 289653, at *7 (S.D.N.Y. Jan. 30, 2009); <u>Ke v. Saigon Grill, Inc.</u>, 595 F. Supp. 2d 260, 262 (S.D.N.Y. 2008) ("[A] plaintiff awarded [NYLL liquidated damages] . . . may also recover pre-judgment interest . . . .").  "Because the unpaid wages to each plaintiff occurred at different times, interest is to be calculated pursuant to C.P.L.R. § 5001(b)," <u>Lin</u>, 2009 WL 289653, at *7, which provides that "[w]here . . . damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date," N.Y. C.P.L.R. § 5001(b).  An appropriate intermediate date is the midpoint of the period over which damages were incurred. <u>Lin</u>, 2009 WL 289653, at *7.  That date here is April 8, 2009.  Greathouse is entitled to prejudgment interest at a simple rate of 9% per annuum, <u>see</u> N.Y. C.P.L.R. §§ 5001, 5004, on his unpaid overtime, unpaid wages, and the wage deductions taken by JHS.  Pre-judgment interest therefore accrues on the total of these amounts, $12,492.50, at a rate of 0.02466% per day, or $3.08 per day from April 8, 2009, until the date judgment is entered.

G.     Liability for Retaliation

The FLSA forbids an employer from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]."  29 U.S.C. § 215(a)(3).  "FLSA retaliation claims are subject to the three-step burden-shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)."  Mullins v. City of New York, 626 F.3d 47, 53 (2d Cir. 2010) (citation omitted).  A plaintiff makes out a prima facie case for retaliation by showing: "(1) participation in protected activity known to the defendant, like the filing of a[n] FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action."  Id. (citation omitted).

The Supreme Court in Kasten v. Saint-Gobain Performance Plastics Corp., 131 S. Ct. 1325 (2011), held that an oral complaint can satisfy the FLSA's requirement that there be a "filing" of a complaint, id. at 1336.  However, as the Second Circuit has held, complaints to a supervisor cannot serve as the predicate for a retaliation claim under 29 U.S.C. § 215(a)(3).  See Lambert v. Genesee Hosp., 10 F.3d 46, 55 (2d Cir. 1993) ("The plain language of [29 U.S.C. § 215(a)(3)] . . . does not encompass complaints made to a supervisor.").  Although the employee in Kasten had in fact made the oral complaint to his employer, the defendant did not present the argument that 29 U.S.C. § 215(a)(3) applies only to complaints submitted by an employee to a relevant government authority, and thus Kasten explicitly declined to address the merits of this issue.  131 S. Ct. at 1336.  The issue Kasten decided was only "the oral/written question," and Kasten intimated no judgment as to whether 29 U.S.C. § 215(a)(3) applies to complaints rendered to one's private employer.  Id.  Therefore, although Kasten abrogated Lambert's ruling

14

as to informal and oral complaints, the rule from Lambert that the FLSA's anti-retaliation

provision does not protect the submission of a complaint to one's supervisor remains valid in this

Circuit.  See Duarte v. Tri-State Physical Med. & Rehab., P.C., 2012 WL 2847741, at *3

(S.D.N.Y. July 11, 2012) ("[T]he holding of Lambert vis-à-vis intracompany complaints remains

binding precedent on this Court.") (citing cases); Son v. Reina Bijoux, Inc., 823 F. Supp. 2d 238,

244 (S.D.N.Y. 2011) ("[T]he Second Circuit's rule holding that complaints to employers do not

qualify as a protected activity controls [here] . . . .") (citing cases); Neviaser v. Mazel Tec, Inc.,

2012 WL 3028464, at *2 (D. Vt. July 25, 2012) ("[T]he Court holds the holding of

Lambert—that complaints to supervisors do not suffice as a protected activity—is controlling.")

(citation omitted); Ryder v. Platon, 2012 WL 2317772, at *7–8 (E.D.N.Y. June 19, 2012)

(concluding that the rule in Lambert that the anti-retaliation provision does not cover complaints

to one's employer remains valid post-Kasten).  Because Greathouse does not allege that his

termination was in response to the submission of a complaint to some relevant governmental or

other prosecutorial authority, Greathouse fails to state a claim for retaliation under the FLSA.

See, e.g., Son, 823 F. Supp. 2d at 244 (complaints must be submitted to a "government agency");

Ryder, 2012 WL 2317772, at *8 (complaints must be submitted to "proper government

authority").

     H.    Attorney's Fees

     A court in an action under the FLSA "shall, in addition to any judgment awarded to the

plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of

the action."  29 U.S.C. § 216(b).  Fees are also awardable with respect to the state law claims

pursuant to the NYLL.  See N.Y. Lab. Law § 198(1-a); Guardado v. Precision Fin., Inc., 2008

WL 822105, at *2 (E.D.N.Y. Mar. 25, 2008).

As the Second Circuit noted in <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v.</u> <u>County of Albany</u>, 522 F.3d 182, 186 (2d Cir. 2008), "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  This calculation provides an objective basis on which to make an initial estimate. . . ."  <u>Id.</u> at 186 (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983)) (emphasis omitted).  This figure has commonly been referred to as the "lodestar" – a term that <u>Arbor Hill</u> eschews in favor of the term "presumptively reasonable fee."  <u>Id.</u> at 189.

1.   <u>Reasonable Hours</u>

It is well established that "any attorney . . . who applies for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records. . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." <u>N.Y. State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1148 (2d Cir. 1983). Here, plaintiff's counsel has submitted summaries of contemporaneous time records, which is a permissible substitute for submission of the records themselves.  <u>See</u>, <u>e.g.</u>, <u>Cruz v. Local Union</u> <u>No. 3 of the Int'l Bhd. of Elec. Workers</u>, 34 F.3d 1148, 1160–61 (2d Cir. 1994); <u>Johnson v. Kay</u>, 742 F. Supp. 822, 837 (S.D.N.Y. 1990).  A court's task is to make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended."  <u>Lunday v. City of Albany</u>, 42 F.3d 131, 134 (2d Cir. 1994).  The critical inquiry is "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."  <u>Grant v. Martinez</u>, 973 F.2d 96, 99 (2d Cir. 1992) (citation omitted), <u>cert.</u> <u>denied</u>, 506 U.S. 1053 (1993); <u>accord</u> <u>Nike, Inc. v. Top Brand Co.</u>, 2006 WL 2946472, at *5 (S.D.N.Y. Feb. 27, 2006).  In addressing this question, courts should not, however, engage in "an <u>ex</u> <u>post</u> <u>facto</u> determination of whether attorney hours were necessary to

16

the relief obtained." Grant, 973 F.2d at 99.

Additionally, if a court finds that claimed hours are "excessive, redundant, or otherwise unnecessary," it should exclude those hours from its calculation of the presumptively reasonable fee. Hensley, 461 U.S. at 434; accord Quaratino v. Tiffany & Co., 166 F.3d 422, 426 n.6 (2d Cir. 1999) (citations omitted); Gierlinger v. Gleason, 160 F.3d 858, 876 (2d Cir. 1998) (citation omitted); Luciano v. Olsten Corp., 109 F.3d 111, 116–17 (2d Cir. 1997); In re Stock Exch. Options Trading Antitrust Litig., 2006 WL 3498590, at *11 (S.D.N.Y. Dec. 4, 2006). However, the Supreme Court noted in Hensley that "[t]here is no precise rule or formula for making these determinations." 461 U.S. at 436.

Here, the time logs submitted by plaintiff's counsel reflect that counsel and her staff expended 24.2 hours on the instant case. 2d Dodson Decl. ¶¶ 15, 18. This is an appropriate number of hours for the work performed on this case of investigating the facts, analyzing and evaluating the information available, preparing the complaint and default-related documents, and serving the defendants.

## 2.   Reasonable Hourly Rate

Arbor Hill made clear that a "reasonable" hourly rate is "what a reasonable, paying client would be willing to pay." 522 F.3d at 184. Thus, "the district court (unfortunately) bears the burden of disciplining the market, stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." Id. (emphasis added). In addition, the rate to be set for the plaintiffs' attorneys must be "'in line with those rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" Reiter v. MTA N.Y.C. Transit Auth., 457 F.3d 224, 232 (2d Cir. 2006) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)) (brackets omitted), cert. denied,

549 U.S. 1211 (2007).

To determine an appropriate hourly rate, <u>Arbor Hill</u> directs that a court should engage in the following process:

> [T]he district court, in exercising its considerable discretion, [is] to bear in mind <u>all</u> of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the <u>Johnson</u> factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."

522 F.3d at 190 (emphasis in original).[2] <u>Arbor Hill</u> specifically identified the following factors to be considered in determining what a reasonable, paying client would be willing to pay:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted <u>pro bono</u> (such that a client might be aware

---

[2] The "<u>Johnson</u> factors" are those laid out in the case of <u>Johnson v. Ga. Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir. 1974). These are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

<u>Arbor Hill</u>, 522 F.3d at 186 n.3 (citing <u>Johnson</u>, 488 F.2d at 717-19).

18

that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

Id. at 184.

The fee applicant bears the burden of establishing the reasonableness of the hourly rates requested. The applicant must produce satisfactory evidence that the requested rates are in line with those prevailing in the community. Blum, 465 U.S. at 895 n.11; see 601 W. Assocs. v. Kleiser-Walczak Constr. Co., 2004 WL 1117901, at *3–4 (S.D.N.Y. May 18, 2004).

In considering the appropriate rate, this Court will also rely on its own knowledge of the rates charged by practitioners. See McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96–97 (2d Cir. 2006) ("A district court may also use its knowledge of the relevant market when determining the reasonable hourly rate.") (citing Miele v. N.Y. State Teamsters Conference Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987)); Farbotko v. Clinton County, 433 F.3d 204, 209 (2d Cir. 2005) (court may consider its "own familiarity with the rates prevailing in the district"). This Court's knowledge derives largely from the Court's participation in settlement conferences, in which the Court in its private discussions often asks attorneys to reveal their hourly rates.

Here, plaintiff's counsel has submitted a declaration in support of her fee application attesting to her educational and professional background, reputation among her peers, legal skills, and the areas in which she focuses her legal practice. The Court has considered all of the factors in Johnson and Arbor Hill and notes that this case was not unusually complex; that it did not demand great resources; that it involved no contested litigation; and that there were no particular timing demands on the case. On the other hand, counsel practices exclusively in the field of employment law, specializes in wage and hour cases, has held important positions in bar

19

organizations devoted to employment law, and has made presentations in continuing legal education programs.  See 2d Dodson Decl. ¶¶ 5-8.  Based on these facts, rates allowed in other cases, and the experience of counsel (who has been admitted to practice since 2003), the Court concludes that an hourly rate of $300.00 for the lead attorney is appropriate here.  See, e.g., Wong v. Hunda Glass Corp., 2010 WL 3452417, at *3 (S.D.N.Y. Sept. 1, 2010) ("[T]he range of fees in this District for civil rights and employment law litigators with approximately ten years' of experience is between $250 and $350 per hour"); De Los Santos v. Just Wood Furniture, Inc., 2010 WL 445886, at *3 (S.D.N.Y. Feb. 2, 2010) (rates of $250 to $350 per hour for employment attorney); Cesario v. BNI Constr., Inc., 2008 WL 5210209, at *9 (S.D.N.Y. Dec. 15, 2008) (awarding $250/hour for lead attorney in FLSA case); Tlacoapa v. Carregal, 386 F. Supp. 2d 362, 370 (S.D.N.Y. 2005) (same); see also Kim v. 167 Nail Plaza, Inc., 2009 WL 77876, at * 8 (S.D.N.Y. Jan. 12, 2009) (citing cases in which experienced civil rights attorneys were awarded $250 per hour and less experienced attorneys received between $125 and $200 per hour). Accordingly, counsel should be awarded $300 per hour for her work in this case.

Counsel requests compensation at a rate of $95 per hour for the work performed by her support staff that was of the nature of work typically performed by a paralegal.  Counsel requests compensation at a rate of $35 per hour for administrative tasks carried out by her support staff. The Court finds these rates to be reasonable.  In the below chart are the attorney's fees and staff fees the Court awards plaintiff.  Next to each rate is the number of hours awarded, and the parentheses indicate the nature of the work performed by counsel's support staff:

| Name | Hours | Rate | Total |
|---|---|---|---|
| Penn Dodson | 23.1 | $ 300 | $6,930.00 |
| Yesenia Scott (paralegal) | 0.5 | $ 95 | $47.50 |
| Yesenia Scott (administrative) | 0.6 | $ 35 | $21.00 |
| **Total** | 24.2 | — | $6,998.50 |

The Court further concludes that no adjustment to the lodestar rate through a multiplier is appropriate because all of the factors relevant to plaintiff's request for the multiplier have been considered in the Court's determination of an appropriate hourly rate.  See generally McDaniel v. County of Schenectady, 595 F.3d 411, 422 (2d Cir. 2010) ("[I]t makes little difference whether a court, following Arbor Hill, considers case-specific factors to estimate a reasonable rate for an attorney's services, which is then multiplied by the number of hours worked, or whether the court takes the traditional approach and considers these same factors in calculating a multiplier to the lodestar.").

> 4.   Costs

An award of attorney's fees should "'include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'"  LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (quoting U.S. Football League v. Nat'l Football League, 887 F.2d 408, 416 (2d Cir. 1989)).  Here, Greathouse requests a total of $480 for the costs of filing the complaint, service of process, and police report document retrieval.  See Proposed Findings at 21.  These costs are recoverable.  See id.; Arbor Hill, 369 F.3d at 97–98; Cheesecake Factory Assets Co. v. Phila. Cheese Steak Factory, 2008 WL 2510601, at *6 (E.D.N.Y. June 20, 2008).

> 5.   Summary

The total of attorney's fees and costs is $7,478.50.

III.    TOTAL OF SUMS AWARDED

Greathouse is entitled to judgment in the amount of: (1) $9,862.50 in unpaid overtime

wages; (2) $825.00 in unpaid wages; (3) $1,805.00 as reimbursement for improperly taken

deductions; (4) $10,687.50 in liquidated damages under the NYLL; (5) pre-judgment interest on

Greathouse's damages for unpaid overtime and improper deductions at the rate of $3.08 per day

from April 8, 2009, until the date judgment is entered; and (6) $7,478.50 in attorney's fees and

costs.

The total of these amounts is $30,658.50 plus $3.08 per day from April 8, 2009, until the

date judgment is entered.

Joint and several liability is appropriate based on the findings above that both defendants

were employers and therefore responsible for the acts giving rise to liability.  See, e.g., Cesario,

2008 WL 5210209, at *10; Entm't by J & J Inc. v. Medina, 2002 WL 273306, at *3 (S.D.N.Y.

Feb. 26, 2002) (citing cases); accord Kingvision Pay-Per-View Ltd. v. Olivares, 2004 WL

744226, at *5 (S.D.N.Y. Apr. 5, 2004).

IV.    CONCLUSION

Judgment in favor of Greathouse and against defendants JHS Security, Inc. ("JHS") and

Melvin Wilcox should be entered in the amount of $30,658.50 plus $3.08 in prejudgment interest

per day from April 8, 2009, until the date judgment is entered, an amount that should be

calculated by the Clerk upon entry of judgment.

## PROCEDURE FOR FILING OBJECTIONS TO THIS
## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties have fourteen (14) days including weekends and holidays from service of

this Report and Recommendation to serve and file any objections.  See also Fed. R. Civ. P. 6(a),

(b), (d).  Such objections (and any responses to objections) shall be filed with the Clerk of the

Court, with copies sent to the Hon. Paul A. Engelmayer, and to the undersigned, at 500 Pearl

Street, New York, New York 10007.  Any request for an extension of time to file objections

must be directed to Judge Engelmayer.  If a party fails to file timely objections, that party will

not be permitted to raise any objections to this Report and Recommendation on appeal.  See

Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis,

Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: September 6, 2012
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

23