UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                               :

DARNELL GREATHOUSE,                                      :

                                               Plaintiff,       :

                                                                :      11 Civ. 7845 (PAE) (GWG)

                            -v-                                 :

                                                                 :      OPINION & ORDER

JHS SECURITY INC.,                                     :
MELVIN WILCOX,                                        :

                                            Defendants.     :

------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

       Plaintiff Darnell Greathouse brings this action against defendants JHS Security, Inc. ("JHS") and Melvin Wilcox to recover unpaid wages and other damages arising out of the defendants' violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, and the New York Labor Law ("NYLL"), §§ 190–199, 650–665. For the reasons set forth below, the Court adopts the Report and Recommendation of Judge Gorenstein in its entirety, with the exception of his findings as to the amount of liquidated damages, and the total number of workweeks for which Greathouse was not paid.

**I.    Background**

       **A.  Procedural History**

       On November 2, 2011, plaintiff filed the Complaint in this case. Dkt. 1. On November 28, 2011, plaintiff served defendant JHS, and on January 9, 2012, plaintiff served defendant Wilcox. Dkt. 2, 8. Neither defendant made an appearance or filed an answer. Accordingly, on March 15, 2012, the Court entered a default judgment in favor of plaintiff, and referred the case to the Magistrate Judge, Hon. Gabriel W. Gorenstein, to conduct an inquest for damages. Dkt.

12–13.  On September 7, 2012, Judge Gorenstein issued a Report and Recommendation (the "Report").  Dkt. 26.  On October 9, 2012, plaintiff filed objections to the Report ("Pl. Obj."). Dkt. 28.

### B.  Facts

Greathouse was employed by JHS, a security company, as a security guard from September 2006 to October 14, 2011.  Wilcox is the president and an owner of JHS.  Greathouse claims to have received inadequate compensation for work performed, and to have been discharged in retaliation for complaints to Wilcox that he had not received his paycheck.  The Court adopts all relevant facts as stated in the Report.

### C.  Judge Gorenstein's Report

Judge Gorenstein's Report addressed, in turn, each of the claims upon which default judgment had been entered in favor of plaintiff.

*1.  Status of Defendants as Greathouse's "Employers"*

Judge Gorenstein first addressed the threshold question of whether each of the defendants qualified as Greathouse's "employer."  Judge Gorenstein found that both JHS and Wilcox exercised sufficient control over Greathouse to qualify as his employer under both the FLSA and NYLL.

*2.  Overtime Wages*

Next, Judge Gorenstein found that defendants violated both the FLSA and NYLL by failing to pay Greathouse overtime wages equal to at least 150% of his regular rate of pay for those hours worked in excess of 40 hours per workweek.

Judge Gorenstein then calculated the damages owed to Greathouse on account of these violations.  Judge Gorenstein accepted plaintiff's counsel's estimate that Greathouse worked an

average of 50 hours per week for an hourly rate of $7.50. Using these figures, Judge Gorenstein calculated that Greathouse received $375 per week—$37.50 per week less than the $412.50 he was owed.

Greathouse claimed that he worked 267 total weeks between September 2006 and October 14, 2011. However, because Greathouse presented no evidence as to the specific date in September 2006 on which he began working for JHS, Judge Gorenstein assumed that date to be September 30, 2006, and therefore reduced the number of total workweeks to 263. Accordingly, Judge Gorenstein calculated that defendants owed Greathouse $9,862.50 in unpaid overtime wages.

### 3. *Unpaid Wages*

Greathouse claimed that he was not paid at all for 15% of the weeks he worked. However, Judge Gorenstein found that Greathouse's evidence was insufficient to support that assertion, because Greathouse's declaration only stated that he was not paid for "a number of workweeks." Accordingly, Judge Gorenstein found that Greathouse had shown only that he was not paid for two workweeks. Therefore, he awarded $825 in damages for that claim.

### 4. *Tardy Wages*

Greathouse claimed that he was paid late at least 50% of the time. However, Judge Gorenstein found that Greathouse's declaration stating that he was paid late "more often than not" was insufficient to support his claim. Therefore, Judge Gorenstein awarded no damages on this claim.

### 5. *Spread of Hours Payments*

Judge Gorenstein next addressed Greathouse's claim that he did not receive "spread of hours" payments as required by the NYLL when an employee's workday exceeds 10 hours.

Finding that Greathouse had failed to provide sufficient evidence as to how often his workday exceeded 10 hours, Judge Gorenstein denied Greathouse's request for damages on this claim.

      6. *Deductions from Wages*

Greathouse requested $2,000 in damages to reflect improper deductions from his wages that defendants made in violation of the NYLL, consisting of: a $25 deduction as a one-time punishment for leaving work to buy food; a $1,750 deduction for missing tools; unspecified deductions for health care; and periodic $15 deductions for costs related to Greathouse's work uniform. Judge Gorenstein found the evidence sufficient that deductions had been taken (1) to punish him for leaving work to buy food, and (2) for missing tools. However, Judge Gorenstein found that the evidence of deductions for health insurance was insufficient, and that the evidence supported only a finding of two $15 uniform deductions. Accordingly, Judge Gorenstein awarded $1,805 in damages.

      7. *Liquidated Damages*

Next, Judge Gorenstein addressed Greathouse's request for liquidated damages under both the FLSA and NYLL. Judge Gorenstein found that there was no evidence that defendants acted in good faith, and that therefore an award of $10,687.50 was merited under the NYLL. However, Judge Gorenstein then recognized that courts in this circuit have reached different conclusions over whether a plaintiff may recover liquidated damages under both the FLSA and the NYLL for the same violations, and he concluded that an additional award of liquidated damages under the FLSA was inappropriate here.

      8. *Prejudgment Interest*

Judge Gorenstein next calculated the amount of pre-judgment interest due to Greathouse under the NYLL on his unpaid wage claims. Using the midpoint of the period during which

damages were incurred, April 8, 2009, and a statutory rate of 9% per annum, Judge Gorenstein concluded that pre-judgment interest would accrue on the total amount of unpaid wage claims, $12,492.50, at a rate of .02466% per day, starting on April 8, 2009.

### 9. *FLSA and NYLL Retaliation Claims*

Next, Judge Gorenstein addressed defendants' liability under the FLSA for unlawful retaliation. Surveying the relevant case law, Judge Gorenstein concluded that the Second Circuit's decision in *Lambert v. Genesee Hosp.*, 10 F.3d 46, 55 (2d Cir. 1993) precludes recovery by a plaintiff who has made only informal oral complaints to a supervisor. Accordingly, Judge Gorenstein concluded that Greathouse's allegation that defendants retaliated against him in response to his informal oral complaint to Wilcox was insufficient to state a claim under the FLSA.

Greathouse did not seek additional damages under his NYLL retaliation claim. Accordingly, Judge Gorenstein did not address that issue.

### 10. *Attorney's Fees*

Finally, Judge Gorenstein addressed Greathouse's request for attorney's fees. Plaintiff's counsel's time logs reflected that counsel and her staff spent 24.2 hours on the case, which Judge Gorenstein found reasonable. After considering the relevant factors, Judge Gorenstein concluded that an hourly rate of $300 for the lead attorney was appropriate, that a rate of $95 per hour was appropriate for paralegal work, and that a rate of $35 per hour was appropriate for administrative work. Using these rates, Judge Gorenstein calculated an award of $6,998.50 in attorney's fees. Judge Gorenstein also found that Greathouse's request of $480 in costs was reasonable, yielding a total of $7,478.50 for attorney's fees and costs.

In sum, Judge Gorenstein recommended a total award of $30,658.50, plus pre-judgment interest to be calculated as stated above.  Finally, Judge Gorenstein found that defendants were jointly and severally liable for this amount.

## II.     Discussion

### A. Standard for Review

A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  When no timely objection has been made to the recommendations of a magistrate judge, "a district court need only satisfy itself that there is no clear error on the face of the record." *Carlson v. Dep't of Justice*, No. 10-cv-5149, 2012 WL 928124, at *1 (S.D.N.Y. Mar. 19, 2012) (slip op.) (internal quotation marks omitted).  When a timely objection has been made, the court is obligated to review the contested issues *de novo*.  *See Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998).

### B. Objections to Judge Gorenstein's Report

Defendants filed no objection to the Report.  Greathouse did not object to the following findings in the Report: defendants' status as "employers" under both the FLSA and NYLL; the amount of damages awarded for unlawful deductions; and the amount of pre-judgment interest awarded.  Accordingly, these findings are reviewed for clear error.  *Carlson*, 2012 WL 928124, at *1.  The Court finds none.

However, there is one finding to which Greathouse did not object, but where the Court does find clear error: the amount of liquidated damages awarded.  Under the NYLL, "[i]f any employee is paid by his or her employer less than the wage which he or she is entitled to under the provisions of this article, he or she shall recover[,] . . . unless the employer proves a good faith basis that its underpayment of wages was in compliance with the law, an additional amount

as liquidated damages equal to one hundred percent of the total of such underpayments found to be due." N.Y. Lab. Law. § 663(1). Judge Gorenstein, citing this standard and finding that defendants had not acted in good faith, awarded $10,687.50 in liquidated damages. That is the sum of the unpaid overtime and the unpaid wages that Judge Gorenstein had awarded, but it fails to account for the $1,805 in unlawful deductions. This amount should have been included in Judge Gorenstein's calculation of liquidated damages. *See Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08 Civ. 3725 (DC), 2010 WL 4159391, at *6 (S.D.N.Y. Sept. 30, 2010) (Chin, J.) (awarding liquidated damages under New York law for, *inter alia*, unlawful deductions); *Ting Yao Lin v. Hayashi Ya II, Inc.*, No. 08 Civ. 6071 (SAS)(AJP), 2009 WL 289653, at *7 (S.D.N.Y. Jan. 30, 2009) (Rep. & Rec.), *adopted in full* 2009 WL 513371 (same); *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 341 (S.D.N.Y. 2005) (stating that "improper deduction as defined by New York state law . . . carries a liquidated damages penalty"). With the unlawful deductions included, the award for liquidated damages would have been $12,492.50. However, because the Court changes one other damages award as calculated by Judge Gorenstein, as discussed below, the ultimate liquidated damages award will be even higher.

Greathouse did object to the following findings, which the Court reviews *de novo*. *Hynes*, 143 F.3d at 656.

    *1. Damage Computations*

Greathouse raises an initial objection to Judge Gorenstein's calculation of damages for each of Greathouse's wage claims: He argues that Judge Gorenstein failed to give the appropriate weight to Greathouse's assertions about the amount of work performed and payment received. In an FLSA suit, the employee "has the burden of proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680,

[7]

687 (1946).  Where the employer fails in its duty to maintain and produce timekeeping records, the plaintiff "carrie[s] out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  *Id.*  "[I]t is possible for a plaintiff to meet this burden through estimates based on his own recollection."  *Kuebel v. Black & Decker, Inc.*, 643 F.3d 352, 362 (2d Cir. 2011).  However, although "a plaintiff's burden under *Anderson* is minimal, there must be at least some credible evidence that he performed overtime work."  *Daniels v. 1710 Realty LLC*, No. 11-3774-cv, 2012 WL 4354494, at *2 (2d Cir. Sept. 25, 2012) (slip op.) (summary order) (affirming finding that plaintiff's testimony was "too vague to be credible").  As will be discussed below, with one exception, Judge Gorenstein correctly held Greathouse to his burden.  That is, Judge Gorenstein accepted Greathouse's testimony, based on his own recollection, where it was sufficiently specific, but failed to credit Greathouse's testimony where it was "too vague to be credible."  *Id.*

  First, Greathouse objects to Judge Gorenstein's finding that the start date of Greathouse's employment should be treated as September 30, 2006, rather than the beginning of September, thus reducing his total number of workweeks to 263 from plaintiff's counsel's estimate of 267.  The only evidence Greathouse provided of his start date was his declaration that he worked at JHS "from September, 2006 to October 14, 2011."  Declaration of Darnell Greathouse ("Greathouse Decl.") ¶ 2.  However, Greathouse provided no evidence from which a more specific start date could be discerned.  Accordingly, he did not meet his burden of providing "sufficient evidence" of his start date, beyond that it was at some point in September.  Greathouse argues that requiring evidence of a more specific start date is "at odds with the spirit of the record-keeping requirements falling squarely on the shoulders of the employer."  Pl. Obj.

[8]

at 16.  However, Judge Gorenstein accepted those dates that Greathouse offered, to the greatest level of specificity possible.  Given that Greathouse is seeking a specific number of *weeks* of overtime pay, but was only able to give an estimate of the *month* in which he started work, it does not seem unduly burdensome to ask for a more proximate estimate of his actual starting date, and, if he cannot, to start the clock from the last day of that month.  The Court therefore finds that 263 is the appropriate number of workweeks.

Second, Greathouse objects to Judge Gorenstein's finding that Greathouse should be awarded damages for two weeks of unpaid wages, rather than between 12 and 40 weeks.  Greathouse's declaration stated that he was not paid for "a number of workweeks" (including his final week).  Greathouse Decl. ¶¶ 21, 23.  Judge Gorenstein concluded that this evidence was only sufficient to support a finding that Greathouse was not paid for two weeks of work.  However, as Greathouse notes in his objections, he also stated that he complained to Wilcox about not receiving paychecks for "several months."  Greathouse Decl. ¶ 25.  This testimony leads to the "fair and reasonable inference" that Greathouse was not paid for at least three months, or 12 weeks.  Accordingly, the Court finds that Greathouse was not paid wages at all for 12 weeks.  Thus, using a rate of $412.50 per week, Greathouse is awarded $4,950 in damages for unpaid wages, rather than the $825 awarded by Judge Gorenstein.[1]

Third, Greathouse objects to Judge Gorenstein's finding that Greathouse should not be awarded any damages for tardy wages.  Greathouse stated that "on the occasions when I was paid, I was more often than not paid late."  Greathouse Decl. ¶ 22.  Greathouse argues that this "is another way of saying" that he was paid late more than 50% of the time.  Pl. Obj. at 17.

---

[1] The liquidated damages award will be adjusted to reflect this increase.

[9]

However, the Court finds that such an assertion is too vague to be reliable. Accordingly, the Court agrees with Judge's Gorenstein's finding that no damages are merited on this claim.

Finally, Greathouse objects to Judge Gorenstein's finding that Greathouse was not entitled to any damages for defendants' failure to make spread of hours payments for days on which Greathouse worked greater than 10 hours. Greathouse stated that he worked more than 10 hours "on at least some workdays." Greathouse Decl. ¶ 15. Judge Gorenstein found that this vague assertion was insufficient evidence upon which to award damages, particularly in light of the fact that the Court would need information as to when these workdays occurred in order to determine the applicable minimum wage rate. The Court agrees. This deficiency is particularly significant in light of the fact that some courts in this circuit have ruled that New York's spread of hours provision only applies to employees earning minimum wage. *See, e.g.*, *Zubair v. EnTech Eng'g P.C.*, 808 F. Supp. 2d 592, 601 (S.D.N.Y. 2011); *Franklin v. Breton Int'l Inc.*, No. 06 Civ. 4877 (DLC), 2006 WL 3591949, at *4 (S.D.N.Y. Dec. 11, 2006) (Cote, J.). *But see Cuzco v. Orion Builders, Inc.*, No. 06 Civ. 2789 (KMW), 2010 WL 2143662, at *4 (S.D.N.Y. May 26, 2010); *Doo Nam Young v. ACBL Corp.*, 427 F. Supp. 2d 327, 339–40 (S.D.N.Y. 2005).

   2. *Retaliation Claims*

Greathouse also objects to Judge Gorenstein's finding that Greathouse is not entitled to damages for his FLSA retaliation claims. Judge Gorenstein concluded that, under *Lambert v. Genesee Hosp.*, 10 F.3d 46, 55 (2d Cir. 1993), an informal complaint made to a supervisor, such as the one at issue here, is an insufficient predicate for an FLSA retaliation claim. In response, Greathouse argues, at length, that *Lambert* should be overruled. That is, of course, an argument better made before the Second Circuit or the Supreme Court. More relevant here is Greathouse's alternative argument that the facts of this case are distinguishable from *Lambert*, because they

[10]

are more akin to the facts of *Brock v. Casey Truck Sales, Inc.*, 839 F.3d 872 (2d Cir. 1989). In *Brock*, plaintiffs filed a formal complaint with the Department of Labor, which found the employer to be in violation of the FLSA. *Id.* at 874–75. After agreeing to pay an award to plaintiffs, the employer attempted to force plaintiffs to take a loyalty oath and repudiate the award; when the plaintiffs refused, they were fired. *Id.* at 875–76. Greathouse argues that when he complained to his supervisor about unpaid wages, he "was doing much the same thing" as the plaintiffs in *Brock*. Pl. Obj. at 13. The Court is unpersuaded. The plaintiffs in *Brock* had filed a formal complaint and obtained a judgment. Greathouse has done no such thing, and courts in this circuit have consistently invoked *Lambert* to dismiss FLSA retaliation complaints under similar circumstances. *See, e.g.*, *Duarte v. Tri-State Physical Med. & Rehab., P.C.*, No. 11 Civ. 3765 (NRB), 2012 WL 2847741, at *3 (S.D.N.Y. July 11, 2012); *Son v. Reina Bijouz, Inc.*, 823 F. Supp. 2d 238, 244 (S.D.N.Y. 2011). Therefore, the Court finds that Greathouse is not entitled to damages for his FLSA retaliation claim.

Greathouse also objects that Judge Gorenstein failed to award damages for Greathouse's state law retaliation claim. Greathouse, quite correctly, observes that the *Lambert* rule is inapplicable to state law retaliation claims. *See Duarte*, 2012 WL 2847741, at *3 ("Unlike its federal analogue, the NYLL's anti-retaliation provision unquestionably protects informal complaints made to an employer."). However, Greathouse's objection fails to include one critical detail: Judge Gorenstein did not address the state law retaliation claim because Greathouse's proposed findings of fact and conclusions of law did not make any request for damages on account of that claim. "Generally, courts do not consider new arguments . . . raised in objections to a magistrate judge's report and recommendation that were not raised, and thus were not considered, by the magistrate judge." *Grant v. Bradt*, No. 10 Civ. 394 (RJS), 2012 WL

3764548, at *4 (S.D.N.Y. Aug. 30, 2012) (quoting *Jackson v. Brandt*, No. 10 Civ. 5858 (PAC)(KNF), 2012 WL 2512015, at *6 (S.D.N.Y. June 29, 2012)).  Thus, because Greathouse failed to raise this argument before Judge Gorenstein, the Court declines to consider it here.

    *3.  Attorney's Fees*

Greathouse also objects to Judge Gorenstein's determination that an hourly rate of $300 is appropriate for plaintiff's counsel.  In making this determination, Judge Gorenstein considered the relevant factors, set forth in *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 186 (2d Cir. 2008).  Judge Gorenstein also cited cases that, as recently as September 2010, found that an appropriate fee range for cases of this nature is between $250 and $350 per hour.  *See, e.g.*, *Wong v. Hunda Glass Corp.*, No. 09 Civ. 4402 (RLE), 2010 WL 3452417, at *3 (S.D.N.Y. Sept. 1, 2010).  Further, Judge Gorenstein relied on his own knowledge of the rates charged by practitioners in determining reasonable hourly rates.  *See McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96–97 (2d Cir. 2006).  Nevertheless, Greathouse objects that the $250–$350 range "seems outdated"; that a more appropriate range for someone of plaintiff's counsel's credentials would be $500–650 per hour; and that, even if the $250–$350 range were appropriate, plaintiff's counsel belongs at the top of that range.

Reviewing Judge Gorenstein's finding *de novo*, the Court agrees that $300 per hour is an appropriate rate for plaintiff's counsel in this case.  As Judge Gorenstein observed, this was not a complex case; it did not demand great resources; and defendants never even appeared in the case. *See Arbor Hill*, 522 F.3d at 184 (listing factors to be considered in determining hourly rates). Considering these factors, and plaintiff's counsel's credentials, the Court is quite comfortable finding that $300 per hour is an appropriate rate.

Finally, Greathouse objects to Judge Gorenstein's conclusion that "no adjustment to the lodestar rate through a multiplier is appropriate because all of the factors relevant to plaintiff's request for the multiplier have been considered in the Court's determination of an appropriate hourly rate." Report at 19. Greathouse argues that counsel's fee should be adjusted to account for the fact that this case involves defaulting defendants, which will likely involve costly collection efforts. As the Second Circuit has observed, "[t]he benefit of *Arbor Hill*'s methodology is that by considering case-specific factors at the outset, the district court's focus on mimicking a market is maintained." *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 422 (2d Cir. 2010). The Court has considered Greathouse's concerns, and factored them into the *Arbor Hill* analysis. Nevertheless, the Court finds that $300 is the appropriate hourly rate for plaintiff's counsel.

Therefore, the Court awards $9,862.50 for unpaid overtime, $4,950 for unpaid wages, $1,805 for unlawful deductions, $16,617.50 in liquidated damages, and $7,478.50 in attorney's fees and costs. This yields a total sum of $40,713.50, plus pre-judgment interest at a rate of .02466% per day, starting on April 8, 2009.

## CONCLUSION

For the foregoing reasons, the Court adopts Judge Gorenstein's Report and Recommendation, with the exception of his findings as to the amount of liquidated damages and the number of workweeks for which Greathouse was unpaid. Judgment in Greathouse's favor will be entered in a separate Order.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: October 19, 2012
       New York, New York