```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
DARNELL GREATHOUSE,                          :
                                             :
                Plaintiff,                   :     11 Civ. 7845 (PAE) (GWG)
                                             :
    -v.-                                     :
                                             :     REPORT AND
                                             :     RECOMMENDATION
                                             :
JHS SECURITY INC. et al.,                    :
                                             :
                Defendants.                  :
---------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Darnell Greathouse brings this action against defendants JHS Security, Inc. ("JHS") and Melvin Wilcox to recover unpaid wages and other damages arising out of the defendants' violations of New York Labor Law ("NYLL") and the Fair Labor Standards Act ("FLSA" or "the Act"). A judgment has already been entered against the defendants in the amount of $53,693.86 for most of Greathouse's claims. The sole remaining issue is the amount of damages to be awarded with respect to Greathouse's claim of retaliation.

I. BACKGROUND

   A. Procedural History

On March 15, 2012, the district court entered a default against defendants JHS Security Inc. and Melvin Wilcox. See Order, filed March 15, 2012 (Docket # 15). The court referred the case to the undersigned for an inquest into damages. See Order of Reference to a Magistrate Judge, filed March 15, 2012 (Docket #16). We issued a Report and Recommendation on September 7, 2012, Greathouse v. JHS Sec. Inc., 2012 WL 3871523 (S.D.N.Y. Sept. 7, 2012), which the district judge adopted in part, see Greathouse v. JHS Sec. Inc., 2012 WL 5185591 (S.D.N.Y. Oct. 19, 2012). Ultimately, plaintiff was awarded $9,862.50 for unpaid overtime,

$4,950 for unpaid wages, $1,805 for unlawful deductions, $16,617.50 in liquidated damages, and $7,478.50 in attorney's fees and costs. Greathouse, 2012 WL 5185591, at *7.

As the undersigned had recommended, the district judge declined to grant damages on plaintiff's claim under the anti-retaliation provision of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3), on the ground that "the Second Circuit's decision in Lambert v. Genesee Hosp., 10 F.3d 46, 55 (2d Cir. 1993) precludes recovery by a plaintiff who has made only informal oral complaints to a supervisor." Greathouse, 2012 WL 5185591, at *3. On April 20, 2015, the Second Circuit overruled Lambert and vacated this part of the district court's decision. See Greathouse v. JHS Sec. Inc., 784 F.3d 105 (2d Cir. 2015). The Second Circuit remanded the case to determine "whether to grant Greathouse a default judgment on his retaliation claim under section 215(a)(3), and if so, what damages, if any, Greathouse is entitled to recover therefor." Id. at 117.

On remand, the district judge held that Greathouse had stated a claim for retaliation under the FLSA. See Order, filed May 18, 2015 (Docket # 36). The court referred to the undersigned the issue of damages arising from the retaliation claim. Id. We then issued an Order finding that plaintiff's previous submissions were insufficient to conduct an inquest on retaliation damages, and permitting plaintiff to supplement the record. See Order, filed May 26, 2015 (Docket # 38). Plaintiff filed proposed findings of fact and conclusions of law, Findings of Facts and Conclusions of Law Regarding Retaliation Claims Only, filed July 6, 2015 (Docket # 43) ("Proposed Findings II"), and his declaration, see Declaration, filed June 26, 2015 (Docket # 41) ("Greathouse Decl. II"), in support of his claim for retaliation damages.

B. Facts Relating to Retaliation Damages

We assume familiarity with the underlying facts concerning defendants' liability in this

matter. See Greathouse, 2012 WL 3871523, at *1-2; Greathouse, 2012 WL 5185591, at *1. In his recent submissions, Greathouse describes the instance of retaliation and the effect it has had upon him. See Proposed Findings II; Greathouse Decl. II. Because his assertions are uncontested, we accept them as true for purposes of this inquest.

Greathouse worked for JHS Security starting in September 2006 until approximately October 14, 2011. Greathouse Decl. II ¶ 2. Greathouse's supervisor throughout his time with JHS was Melvin Wilcox. Id. ¶ 4. Greathouse "was never paid in a consistent, timely manner," but when he did receive compensation, it never exceeded $8.00 per hour. Id. ¶ 5. Greathouse made many requests for his pay, but was often told by Mr. Wilcox or "office people" that the checks were not ready or unavailable. Id. ¶ 7. In October 2011, Greathouse realized that he had not been paid by JHS "in over 6 months," and called Wilcox to request his salary. Id. ¶ 8. Wilcox requested that Greathouse come to his house. Id. When Greathouse arrived, Wilcox told him "I'll pay you when I feel like it" and then pointed a gun at Greathouse. Id. Greathouse interpreted Wilcox's threat as "effectively a termination." See Complaint, filed November 2, 2011 (Docket # 1) ("Complaint"), ¶¶ 1-2, 74-75. After being threatened by Wilcox, Greathouse called the police and Wilcox was arrested. Greathouse Decl. II ¶ 9. Greathouse did not press charges against Wilcox, however, because he was concerned with the "backlash" it would cause for his co-workers. Id.

After the incident at Wilcox's home, Greathouse felt anxious and "became very withdrawn and did not want to be around people," including his friends and family. Id. ¶ 11. Greathouse did not seek treatment or medical counseling to address these feelings because he could not afford it and did not know anyone who worked "in the field." Id. The incident made Greathouse feel "powerless" and he believes it will "affect [him] on some level for the rest of

[his] life." Id. ¶ 14. Afterwards, he did not feel comfortable riding the train or bus because he was "nervous being around people." Id. ¶ 11. Greathouse's anxiety made it more difficult to find new employment as he was "weary [sic] of future employers." Id. Greathouse found employment "one year after the incident with Mr. Wilcox," Id. ¶ 12, and has been continuously employed ever since. Id. He now works in construction. Id.

II. APPLICABLE LAW

The failure to answer the complaint establishes the defendants' liability for damages relating to the retaliation claim. See, e.g., Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995). But the allegations in the complaint "set forth in connection with damages are not deemed admitted on account of [the] defendant's default." Becerra v. Well Maid Cleaning Enterprises, Inc., 2015 WL 5009274, at *4 (E.D.N.Y. Apr. 21, 2015) (citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). Rather, a court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). In cases of default, a plaintiff must "substantiate a claim with evidence to prove the extent of damages." Belizaire v. RAV Investigative & Sec. Servs. LTD., 61 F. Supp. 3d 336, 345 (S.D.N.Y. 2014). The court must review such evidence and grant the party seeking damages all "reasonable inferences" that the evidence suggests. Au Bon Pain Corp. v. Artect Inc., 653 F.2d 61, 65 (2d Cir. 1981). Nevertheless, if plaintiffs fail to demonstrate damages to a reasonable certainty, "the court should decline to award any damages, even where liability has been established through default." Belizaire, 61 F. Supp. 3d at 345.

III. DISCUSSION

With respect to the retaliation claim, Greathouse has requested back pay in the amount of $21,450, emotional distress damages of $20,000, punitive damages of $214,500, and liquidated damages for both back pay and emotional distress in an amount matching each award. Proposed Findings II, at 17.[1] We address the availability of each category of damages under the FLSA.[2]

A. Back Pay

The FLSA provides that employers who perform acts of retaliation against an employee "shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title [the anti-retaliation provision], including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C.A. § 216(b). Thus, back pay is explicitly included in the statute through its reference to "the payment of wages lost."

A plaintiff who has been unlawfully terminated through acts of retaliation generally must use "reasonable diligence in finding other suitable employment" to mitigate the degree of harm suffered. Dailey v. Societe Generale, 108 F.3d 451, 455 (2d Cir. 1997) (citing Ford Motor Co. v. EEOC, 458 U.S. 219, 231 (1982), accord Chowdry v. Hamza Exp. Food Corp., 2015 WL 5541767, at *7 (E.D.N.Y. Aug. 21, 2015) (noting the relevance of mitigation efforts in relation to a FLSA retaliation claim). However, "it is the defendant who has the evidentiary burden of

---

[1] We refer to this document by the page numbers provided by the ECF system.

[2] We do not reach the question of Greathouse's entitlement to any award under the New York Labor Law because Greathouse has not briefed the availability of the various categories of damages under that statute and because he states that he does not seek damages under the New York Labor Law if he obtains a recovery under the FLSA. See Proposed Findings II, at 15-16. We also do not reach the question of his entitlement to prejudgment interest or additional attorney's fees inasmuch as he has made no request for such awards.

demonstrating . . . plaintiff has failed to satisfy this duty," Dailey, 108 F.3d at 456.  Thus, a plaintiff has "no burden to carry regarding mitigation." Azkour v. Little Rest Twelve, 2015 WL 631377, at *8 (S.D.N.Y. Feb. 12, 2015).

Following Greathouse's constructive termination on October 14, 2011, Greathouse did not secure new employment for one year.  See Greathouse Decl. II. ¶¶ 2, 8, 12.  Therefore, to remedy the unlawful retaliation, Greathouse seeks back pay equivalent to one year's salary at the rate previously adopted by this court, $412.50 per week.  Greathouse v. JHS Sec., Inc., 2012 WL 3871523, at *5; Proposed Findings II, at 8.  Because the burden to establish a plaintiff's failure to mitigate lies solely with the defendant, and defendants have provided no evidence on this issue, Greathouse should be awarded damages in the form of lost wages in the amount of $21,450 ($412.50 X 52 weeks).[3]

B. Emotional Distress Damages

The FLSA provides that workers may obtain "legal . . . relief as . . . appropriate." 29 U.S.C.A. § 216(b).  While the Second Circuit has not yet addressed whether emotional distress damages are an appropriate form of relief under the retaliation provision of the Act, a number of courts have held that such damages are available.  See, e.g., Solis v. SCA Restaurant Corp., 938 F. Supp. 2d 380, 403-04 (E.D.N.Y. Apr. 5, 2013); Perez v. Jasper Trading, Inc., 2007 WL 4441062, at *7, *10 (E.D.N.Y. Dec. 17, 2007); Lai v. Eastpoint Int'l, Inc., 2002 WL 265148, at *1 (S.D.N.Y. Feb. 22, 2002); accord Moore v. Freeman, 355 F.3d 558, 564 (6th Cir. 2004); Travis v. Gary Comm. Mental Health Ctr., Inc., 921 F.2d 108, 111-12 (7th Cir. 1990).  We are

---

[3] A full award of back pay is appropriate here, as this is not a case in which the employee who suffered retaliatory termination worked for only a brief period before the termination.  See, e.g., Parilla v. Salt & Pepper on 33rd St. Inc., 2013 WL 4536628, at *3 (S.D.N.Y. Apr. 8, 2013) (reducing plaintiff's retaliation award under NYLL from $45,075 to $1,000).

aware that other courts have held to the contrary. See Douglas v. Mission Chevrolet, 757 F. Supp. 2d 637, 639-40 (W.D. Tex. 2010); Tucker v. Monsanto Co., 2007 WL 1686957, at *3 (E.D. Mo. 2007); Bolick v. Brevard Cty. Sheriff's Dept., 937 F. Supp. 1560, 1566-67 (M.D. Fla. 1996). Nonetheless, in light of the FLSA's evident purpose to fully compensate victims of retaliation, we conclude that emotional distress damages are available under the anti-retaliation provision of the FLSA. The contrary cases rely on an analogy to the Age Discrimination in Employment Act ("ADEA") that the court in Randolph v. ADT Sec. Serv., Inc., 2012 WL 2234362 (D. Md. June 14, 2012), has ably explained is not applicable for several reasons — including the extensive conciliation process contemplated by the ADEA, which would be frustrated by the availability of emotional distress damages, id. at *5–*7.

With regard to the amount of the emotional distress award, Greathouse has requested $20,000 in damages. Proposed Findings II, at 12. Greathouse alleges that he suffered significant emotional distress after Wilcox threatened him with a gun. Id. at 11-12. Greathouse has not provided the court with any medical documentation regarding his emotional injury. Instead, he avers in his sworn declaration that after the incident he became "withdrawn," even from his friends and family; that he felt anxious and nervous when he was "around people"; and that the incident left him feeling "powerless." Greathouse Decl. II ¶¶ 11, 14. Greathouse also suggests that these feelings significantly impeded his ability to find replacement employment throughout the following year. Id. ¶ 11.

Greathouse's assertions resemble the lower end of the so-called "garden variety" emotional distress claims. In such matters, the "evidence of mental anguish suffered is generally limited to the testimony of the plaintiff, is described in vague or conclusory terms, without presenting evidence of the duration, severity or consequences of the condition, and there is

7

minimal or no evidence of medical treatment." Fowler v. New York Transit Authority, 2001 WL 83228, at *13 (S.D.N.Y. Jan. 31, 2001). Courts reviewing such matters in the employment context have commonly approved of awards in the range of $5,000 to $30,000. See, e.g., Perez v. Jasper Trading, Inc., 2007 WL 4441062, at *9 (E.D.N.Y. Dec. 17, 2007) (noting that the evidence in such cases "usually consists of the plaintiff's own testimony describing the emotional distress, with little or no supporting medical evidence") (making awards of between $2,500 and $15,000); Jowers v. DME Interactive Holdings, Inc., 2006 WL 1408671, at *12 (S.D.N.Y. May 22, 2006) (awarding $15,000 for emotional distress, where the plaintiff stated she suffered from feelings of "stress, anger, sadness and frustration," had developed insomnia, hives, headaches, and nausea, resulting from the instance of discrimination, and failed to obtain new employment when a potential employer learned of her pending lawsuit); Bick v. City of New York, 1998 WL 190283, at *25 (S.D.N.Y. Apr. 21, 1998) (surveying cases in which emotional distress awards ranged between $5,000 and $30,000); McIntosh v. Irving Trust Co., 887 F. Supp. 662, 664, 668-69 (S.D.N.Y. 1995) (reducing a plaintiff's emotional distress award from $219,428 to $20,000, where the plaintiff described feelings of humiliation, shock, anger, and embarrassment, as well as physical manifestations of his mental distress that forced him to stay home from work, meet with a doctor, and suffer weakness throughout his body); Solis v. SCA Restaurant Corp., 938 F. Supp. 2d at 404 (awarding $1,000 in emotional damages for each plaintiff, as they "did not testify that they exhibited any physical symptoms from their emotional distress," and merely described feelings of fear or nervousness).

If the source of Greathouse's emotional distress was considered exclusively based on the symptoms he describes, we would conclude that he was entitled to an award far lower than the $20,000 Greathouse he seeks. Here, however, the retaliation was accomplished by Greathouse

8

being threatened with a gun, an obviously traumatic event. In these circumstances, an award of $10,000 is appropriate.

### C. Liquidated Damages

Greathouse has also requested liquidated damages in an amount equal to his requested back pay and emotional distress damage awards. Proposed Findings II, at 12-15. The FLSA provides for liquidated damages equal to "unpaid wages due, unless the employer demonstrates . . . good faith and . . . reasonable grounds for believing that its actions were lawful." Man Wei Shiu v. New Peking Taste Inc., 2014 WL 652355, at *12 (E.D.N.Y. Feb. 19, 2014) (citing 29 U.S.C.A. §§ 216(b), 260). In matters involving retaliation, the employer bears the burden of establishing "subjective good faith and [the] objective reasonableness" of their actions. Reich v. Southern New England Telecomm. Corp., 121 F.3d 58, 71 (2d Cir. 1997); accord Barfield v. New York City Health & Hosp. Corp., 537 F.3d 132, 150 (2d Cir. 2008). Because defendants have defaulted, they have not established the requisite showing of good faith to defeat a claim for liquidated damages. Thus, Greathouse should be awarded liquidated damages in the amount equal to the amount of unpaid wages, $21,540.

Greathouse should not be awarded liquidated damages based on his emotional distress award, however. The language of the FLSA limits liquidated damages to the amount of any "payment of wages lost." See 29 U.S.C. §216(b); see also Southern New England Telecomm. Corp., 121 F.3d at n.4 (liquidated damages are meant to "compensat[e] employees for losses they might suffer by reason of not receiving their lawful wage at the time it was due") (citation and internal quotation marks omitted).

### D. Punitive Damages

The FLSA does not explicitly authorize an award of punitive damages for retaliation and

we are not aware that the Second Circuit has addressed whether such damages are available. Courts within this circuit have generally been receptive to granting punitive damages for retaliation, although there is contrary authority outside the Circuit.  See e.g. Azkour, 2015 WL 631377, at *9-10 (finding punitive damages available upon a showing of "knowledge or reckless indifference" that one is acting in violation of federal law); Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 264 (S.D.N.Y. 2008) (recognizing that punitive damages may be available for FLSA retaliation claims); Sines v. Serv. Corp. Int'l, 2006 WL 3247663, at *2-3 (S.D.N.Y. Nov. 8, 2006) (affirming jury award of punitive damages); Chowdry v. Hamza Exp. Food Corp., 2015 WL 5541767, at *6-7 (recognizing that punitive damages may be available under FLSA retaliation claims); Solis, 938 F. Supp. 2d at 403-04 (same); accord Lambert v. Ackerley, 180 F.3d 997, 1011 (9th Cir. 1999) (dictum); Travis, 921 F.2d at 111-12 (holding punitive damages available under the retaliation provision of the FLSA); but see Snapp v. Unlimited Concepts, Inc., 208 F.3d 928, 934, 939 (11th Cir. 2000) (holding FLSA did not provide for punitive damages); Allen v. Garden City Co-op Inc., 651 F. Supp. 2d 1249, 1261-65 (D. Kan. 2009) (reviewing cases and holding the broad remedial authority in the FLSA relates only to compensatory damages); Waldermeyer v. ITT Consumer Fin. Corp., 782 F. Supp. 86, 88 (E.D. Mo. 1991) ("Punitive damages are not available under the FLSA").

In reaching the conclusion that punitive damages are permitted under the retaliation provision of the FLSA, the Court in Travis relied primarily on the evolution of the Act from its 1938 origins to the present day.  See Travis, 921 F.2d at 111.  As enacted in 1938, the penalties provision of the Act "allowed only for specific types [of] damages that excluded compensatory and punitive damages."  Sines, 2006 WL 3247663, at *2.  However, in 1977, Congress amended this provision to expand the scope of liability against employers who violated the Act's

retaliation provision.  See id.; 29 U.S.C.A. §§ 216(b)-(c).  Under the current version of the Act, employers can be held "liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3)."  29 U.S.C.A. §§ 216(b).  The clause that follows lists "employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages" as available remedies, but specifically notes that this list is not intended to be a "limitation" on the available relief.  Id.  Interpreting the phrase "legal . . . relief" to generally include both compensatory and punitive damages, the Court in Travis read the provision to allow legal relief without limitation, noting that "legal" relief is a term that is "commonly understood to include compensatory and punitive damages."  Travis, 921 F.2d at 111.

The Eleventh Circuit in Snapp held punitive damages were unavailable under the retaliation provision of the FLSA.  208 F.3d at 934. The Eleventh Circuit highlighted the lack of express language authorizing punitive damages.  Id.  It also noted that the FLSA contained a section allowing for criminal penalties, 29 U.S.C. § 216(a), which it viewed as "punitive in purpose."  Id.  It contrasted this section with § 216(b), which it viewed as "compensatory."  Id.  It thus concluded that no portion of § 216(b) was intended to include any punitive sanction.  Id.  Additionally, Snapp interpreted the power to award legal relief "without limitation" under the principle of ejusdem generis, drawing meaning from the phrase based on the terms that were specified as being included in the available remedies.  Id. at 934.  Under this framework, Snapp concluded that the forms of relief listed in the statute each had the goal of compensating victims of unlawful retaliation, not punishing a retaliating employer.  Id. ("[A]wards of unpaid minimum wages, unpaid overtime compensation, employment, reinstatement, promotion, and the payment of wages lost all [are] . . . compensatory in nature.").  Accordingly, the Court found that

Congress had not intended punitive awards to be available under the FLSA. Id. at 939.

We respectfully disagree with Snapp as we believe it reads too much into the inclusion of the provision containing criminal penalties and accords too much weight to the principle of ejusdem generis given the statute's reference to the forms of relief listed as being "without limitation." 29 U.S.C. § 216(b). The language of section 216(b) is broad and we are mindful of the rule that courts must "presume the availability of all appropriate remedies unless Congress has expressly indicated otherwise," Franklin v. Gwinnet Cty. Pub. Schs., 503 U.S. 60, 66 (1992) (citations omitted). Furthermore, the term "legal . . . . relief" is followed by a direction that the phrase includes any legal relief that "may be appropriate to effectuate the purposes" of the FLSA. Id. In light of the "remedial and humanitarian . . . purpose" of the FLSA, Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 597 (1944), we conclude that punitive damages are available under the anti-retaliation provision of the FLSA.

Because the FLSA does not specifically mention punitive awards, it obviously does not give a standard by which to judge their imposition. Courts have often relied on the standard articulated in 42 U.S.C. § 1981a(b)(1), which governs various federal employment discrimination statutes. See, e.g., Azkour, 2015 WL 631377, at *9; Randolph, 2012 WL 2234362, at *3-4. This standard requires the plaintiff to establish that a defendant "discriminated or retaliated . . . with malice or with reckless indifference to [a] federally protected right,[]" Azkour, 2015 WL 631377, at *9 (citing Caravantes v. 53rd St. Partners, LLC, 2012 WL 3631276, at *25 (S.D.N.Y. Aug. 23, 2012), or otherwise engaged in "outrageous conduct" through their retaliatory actions, Solis, 938 F. Supp. 2d at 404.

Here, after hearing Greathouse's request for pay, Wilcox pulled a gun and said "I'll pay you when I feel like it." Greathouse Decl. II ¶ 8. Plainly, an employer's implicit threat of

serious harm or death in response to an employee's invocation of his federal rights qualifies as both "outrageous" conduct and conduct showing "malice or reckless indifference."

As to the amount of punitive damages that should be awarded, Greathouse has requested a "10x back pay multiplier," resulting in an award of $214,500 ($21,450 X 10). Proposed Findings II at 11, 17. In BMW of North America Inc. v. Gore, 517 U.S. 559 (1996), the Supreme Court discussed three factors that courts should consider when determining the appropriateness of a punitive damage award by a jury. Id. at 575. These are (1) the "reprehensibility of the defendant's conduct;" (2) the ratio of the punitive damages award to the "actual harm inflicted on the plaintiff"; and (3) the relationship between "the punitive damages award and the civil or criminal penalties that could be imposed for comparable misconduct." Id. at 575, 580, 583; accord DeCurtis v. Upward Bound Int'l, Inc., 2011 WL 4549412, at *5 (S.D.N.Y. Sept. 27, 2011). These factors, however, do not fully inform our analysis because it is settled that "a reviewing court owes great deference" to a jury's verdict of a damage award. McIntosh v. Irving Trust Co., 887 F. Supp. 662, 664 (S.D.N.Y. 1995); accord Ismail v. Cohen, 899 F.2d 183, 186 (2d Cir. 1990).

When determining the extent of a punitive award, courts should presume that the plaintiff has been made "whole" through their compensatory damages award, State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 410 (2003), and remember that the purpose of punitive damages is "to punish the defendant and to deter him and others from similar conduct in the future." Lee v. Edwards, 101 F.3d 805, 809 (2d Cir. 1996); accord Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 21 (1991) (noting that punitive awards must be kept reasonable in light of their purpose). The Second Circuit has cautioned that "[a]wards of punitive damages are by nature speculative, arbitrary approximations. No objective standard exists that justifies the award of one amount, as

13

opposed to another, to punish a tortfeasor appropriately for his misconduct. Nor is there any formula to determine the dollar amount needed to effectuate deterrence." Payne v. Jones, 711 F.3d 85, 93 (2d Cir. 2013).

In this case, Wilcox's conduct is easily categorized as "reprehensible." As noted by Greathouse, his work with JHS was his "first long-term job, and . . . first real experience with the workplace." Greathouse Decl. II ¶13. Wilcox took advantage of this vulnerability for many years, and implicitly threatened Greathouse's life by brandishing a gun when he finally confronted Wilcox to request his pay. Id. ¶ 8. These facts favor a punitive damage award.

We also consider the ratio of any punitive damages award in relation to Greathouse's compensatory award. Gore, 517 U.S. at 580. To determine the total amount of compensatory damages in the base for comparison, courts have favored the inclusion of both back pay and emotional distress damages. See e.g. Kuper, 2003 WL 359462, at *9-10 (S.D.N.Y. Feb. 18, 2003) (including both back pay and emotional distress damages as part of the compensatory award); Iannone v. Frederick R. Harris, Inc., 941 F. Supp. 403, 415 (S.D.N.Y. 1996) ("[t]he magnitude of injury to the plaintiff in a Title VII action is not measured solely by the award of compensatory damages; it is also reflected in the size of the back pay award."); Solis, 938 F. Supp. 2d at 385 (including emotional distress damages in the calculation of plaintiff's compensatory award). Thus, although Greathouse's submission has suggested that only his back pay should be included in the base for comparison, we will consider both his emotional distress and back pay awards. In addition, we include the award of liquidated damages inasmuch as they are compensatory. See Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999) ("Liquidated damages are not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of

14

the FLSA"). Here, Greathouse is entitled to $21,450 in back pay, $21,450 in liquidated damages as well as $10,000 in emotional distress damages. Thus, Greathouse's total amount of compensatory damages for his retaliation claim is $52,900. If the compensatory portion of the original award is included in the calculus, the total in compensatory damages is $86,135 ($52,900 plus $33,235). The Supreme Court has found that punitive awards of "more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." Campbell, 538 U.S. at 425. Thus, this principle would set an upper limit of $344,540.

It is difficult for us to address Gore's consideration of the civil and criminal penalties for comparable misconduct. Gore, 517 U.S. at 583. Greathouse has not provided any information regarding the civil penalties that would be available for Wilcox's misconduct. As for criminal penalties, it would appear that Wilcox engaged in the crime of Menacing in the Second Degree, N.Y. Penal Law § 120.14, in that he "intentionally place[d]" Greathouse "in reasonable fear of physical injury, serious physical injury or death by displaying . . . what appears to be a . . . firearm." N.Y. Penal Law § 120.14. This crime, however, is only a misdemeanor under New York law, and is thus punishable by a maximum of one year in jail. N.Y. Penal Law § 70.15. He has also violated the criminal provision of the FLSA, 29 U.S.C. § 219(a). This statute provides for a maximum of only six months in jail.

We note that courts evaluating matters that involved seemingly more egregious conduct have awarded significantly smaller punitive awards than the $214,500 that plaintiff requests here. See, e.g., DeCurtis, 2011 WL 4549412, at *3-5 ($75,000 in punitive damages resulting from repeated sexual harassment and workplace retaliation in violation of Title VII and state law); Walia v. Vivek Purmasir & Assocs. Inc., 160 F. Supp. 2d 380, 383-86, 392 (E.D.N.Y.

2000) ( $30,000 in punitive damages for plaintiff who experienced repeated instances of sexual harassment, assault, threats of physical violence, and defamation); Patterson v. Balsamico, 440 F.3d 104, 121 (2d Cir. 2006) ($10,000 in punitive damages where defendant had physically assaulted plaintiff, sprayed him with mace, and threatened him with racial slurs); Medina v. Donaldson, 2014 WL 1010951, at *1–2, 18 (E.D.N.Y. Mar. 14, 2014) (affirming jury award of $16,000 in punitive damages, where the defendant police officer punched plaintiff while he was handcuffed, causing a gash and bruising to his right eye, worsening his pre-existing post-traumatic stress disorder, and nightmares).  We recognize, however, that the comparison of punitive awards is "of limited utility because each award is fact-specific." Chisholm v. Memorial Sloan-Kettering Cancer Ctr., 824 F. Supp. 2d 573, 580 (S.D.N.Y. 2011) (internal quotation marks and citation omitted).  In the end, we focus on the fact that the purpose of punitive damages is "to punish the defendant and to deter him and others from similar conduct in the future." Lee, 101 F.3d at 809.  Given that there is no evidence that Wilcox ever engaged in other egregious conduct, we believe that a punitive damages award of $10,000 is sufficient to achieve the purpose of deterring him from engaging in such conduct in the future.

IV.  CONCLUSION

For the foregoing reasons, Greathouse should be awarded $21,450 in back pay; $21,450 in liquidated damages; $10,000 in emotional distress damages; and $10,000 in punitive damages for a total of $62,900 in damages on his retaliation claim against defendants.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of

this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Paul A. Engelmayer at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Engelmayer. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: November 13, 2015
      New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge


Copy sent to:

Melvin Wilcox
9 East 193rd St., Apt. #1-C
Bronx, NY 10468

17