USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8-29-16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

DARNELL GREATHOUSE,

                        Plaintiff,

        -v-

JHS SECURITY INC. and MELVIN WILCOX,

                        Defendants.

------------------------------------------------------------X

11 Civ. 7845 (PAE) (GWG)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

After not receiving his paycheck for six months, security guard Darnell Greathouse complained to his supervisor, defendant Melvin Wilcox, who responded by pointing a gun at Greathouse and explained, "I'll pay you when I feel like it." Invoking the anti-retaliation and other provisions of the Fair Labor Standards Act ("FLSA"), Greathouse brought this action against his employer, JHS Security, Inc. ("JHS"), and Wilcox to recover damages traceable to this incident and for JHS's underpayment of his wages. Defendants defaulted. The Court referred the case to Magistrate Judge Gabriel W. Gorenstein to conduct an inquest into damages, Dkt. 36.

The Court has already entered a judgment adopting Judge Gorenstein's recommendation that Greathouse, on his claims other than for retaliation, be awarded $53,693.86 in damages. On November 16, 2015, Judge Gorenstein issued a Report and Recommendation, Dkt. 45 (the "Report"), addressing damages on the retaliation claim. For the reasons set forth below, the Court adopts the Report in its entirety and awards Greathouse an additional $62,900 in damages against defendants for violating the FLSA's anti-retaliation provision.

**I.     Background**[1]

    **A.     Procedural History**

On November 2, 2011, Greathouse filed a complaint against JHS and Wilcox, alleging violations of the FLSA, 29 U.S.C. §§ 201–219, and the New York Labor Law, §§ 190–199, 650–665. Dkt. 1. On November 28, 2011, Greathouse served JHS and, on January 9, 2012, served Wilcox. Dkts. 2, 8. Neither defendant appeared or answered. The Court accordingly entered a default judgment in favor of Greathouse and referred the case to Judge Gorenstein to conduct an inquest into damages. Dkts. 15–16. On September 7, 2012, Judge Gorenstein issued a Report and Recommendation, Dkt. 26 (the "Initial Report"), tabulating damages on the various claims. On October 9, 2012, Greathouse filed objections to the Initial Report. Dkt. 28. Relevant here, Greathouse objected to the Initial Report's recommendation that Greathouse be denied damages on his retaliation claim. *Id.*

On October 19, 2012, the Court, adopting the Initial Report, entered judgment against defendants, and awarded damages for most of Greathouse's claims. Dkts. 30–31. The Court, however, agreed with Judge Gorenstein that Greathouse was ineligible for damages based upon his retaliation claim. Dkt. 30. As Judge Gorenstein recognized, the Second Circuit's then-binding decision in *Lambert v. Genesee Hosp.*, 10 F.3d 46, 55 (2d Cir. 1993), squarely precluded recovery by a plaintiff, such as Greathouse, who had made only informal oral complaints to a supervisor. *Id.* at 5.

On April 20, 2015, on Greathouse's appeal, the Second Circuit overruled *Lambert*. *See Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 107 (2d Cir. 2015). Accordingly, it vacated and

---

[1] The summary of the facts is drawn from the detailed account in the Report and from the Court's review of the case record.

remanded this Court's decision adopting the Initial Report insofar as the Report had relied on *Lambert* to deny Greathouse relief on his retaliation claim. *Id.* The Second Circuit otherwise affirmed.

The sole issue here on remand, therefore, is the amount of damages to which Greathouse is due on his retaliation claim. On May 18, 2015, the Court again referred this case to Judge Gorenstein for an inquest into the amount of retaliation damages. Dkt. 36–37. On May 26, 2015, Judge Gorenstein ordered Greathouse to supplement the record regarding his claim for such damages, Dkt. 38, which Greathouse did, Dkts. 41, 43. On November 16, 2015, Judge Gorenstein issued a final Report and Recommendation. Dkt. 45. No objections to the Report were received.

### B. Facts Relevant to Greathouse's Retaliation Damages

Greathouse worked as a JHS security guard between September 2006 and approximately October 14, 2011. He sued JHS and Wilcox, claiming, *inter alia*, that they had effectively discharged him in retaliation upon, and for, his October 2011 complaint to Wilcox that he had not been paid for more than six months. Specifically, Greathouse claimed, he called Wilcox to request the unpaid wages, and Wilcox asked Greathouse to come to his house. There, Wilcox told Greathouse, "I'll pay you when I feel like it," and pointed a gun at Greathouse. Report at 3.

Greathouse claimed that Wilcox's response was an effective termination, and that, as a result of it, he suffered lost wages and anxiety and emotional distress. Specifically, he claimed, he found it difficult to ride the train or bus, and to find new work, feeling uncomfortable with new employers. About a year after Wilcox pointed the gun at him, Greathouse found a new job, and has been employed ever since, in the construction field. *Id.* at 3–4.

On his claim for retaliation damages resulting from his termination, Greathouse sought $21,450 in back pay; $20,000 in emotional distress damages; liquidated damages for both back pay and emotional distress in amounts matching each award; and $214,500 in punitive damages. *Id.* at 5.  Judge Gorenstein's Report carefully addressed each category, seeking to ascertain the amount of damages with reasonable certainty.  It recommended awarding Greathouse $21,450 in back pay; $10,000 in emotional distress damages; $21,450 in liquidated damages, *i.e.*, matching the back pay award but not the emotional distress damages; and $10,000 in punitive damages. These total $62,900.  *Id.* at 16.

## II.     Discussion

After a magistrate judge has issued a Report and Recommendation, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  To accept the portions of a report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." *Acevedo v. Lempke*, No. 10 Civ. 5285 (PAE) (HBP), 2014 WL 4651904, at *3 (S.D.N.Y. Sept. 17, 2014) (quoting *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009)).  When a timely and specific objection has been made, the court is obligated to review the contested issues *de novo*.  *See id.*; Fed. R. Civ. P. 72(b)(3); *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998).

As the Report recognized, although defendants defaulted, a plaintiff's allegations of damages are not admitted by virtue of the default.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).  Instead, a district court must undertake an inquiry to determine the amount of damages with "reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).  A plaintiff's request for damages

must be supported with some evidentiary basis, and a district court may conduct a hearing or review detailed affidavits and documentary evidence to determine damages. *See Cement and Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Education and Training Fund and Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012); *see also* Fed. R. Civ. P. 55(b)(2). The party seeking damages is entitled to all reasonable inferences suggested by the evidence presented. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

Here, Judge Gorenstein's Report analyzed each category of damages Greathouse sought —back pay, emotional distress damages, liquidated damages, and punitive damages—in light of the evidence and the relevant legal standards. Because there were no objections to the Report, the Court reviews it for clear error.

### A. Back Pay

Greathouse first seeks back pay for the year of unemployment that followed his termination. As the Report recognized, an employer who violates the FLSA's anti-retaliation provision, 29 U.S.C. § 215(a)(3), is "liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation . . . the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Although a plaintiff generally has a duty to use reasonable diligence in finding new suitable employment to mitigate damages, *see Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 231 & n.15 (1982), the burden is on the defendant to establish a plaintiff's failure to satisfy this duty, *Dailey v. Societe Generale*, 108 F.3d 451, 456 (2d Cir. 1997).

Here, Greathouse did not secure new employment for a year after Wilcox effectively terminated him. The weekly rate of pay adopted by the Court in this case is $412.50, which,

multiplied by 52 weeks, yields $21,450 in back pay. Report at 6. Because defendants did not come forward with any evidence calling into question Greathouse's diligence in securing new employment after he was terminated, the Report properly concluded that Greathouse is entitled to damages of $21,450 in back pay.

### B. Emotional Distress Damages

Greathouse seeks damages for the emotional distress he suffered after Wilcox pointed a gun at him and refused to pay him. As the Report observed, while the Second Circuit has not yet addressed whether damages for emotional distress are available for retaliation claims under the FLSA, numerous other courts have so held, although there is contrary authority. *See* Report at 6–7. Having reviewed the issue, the Court, substantially for the reasons stated in the Report, holds that emotional distress damages are allowable under § 216(b), the FLSA's remedial section. That section permits "legal or equitable relief as may be appropriate to effectuate the purposes" of the anti-retaliation provision, *see* 29 U.S.C. § 216(b), and "[a]ppropriate legal relief includes damages," including for emotional distress and punitive damages, *Travis v. Gary Cmty. Mental Health Ctr., Inc.*, 921 F.2d 108, 112 (7th Cir. 1990). *See also Moore v. Freeman*, 355 F.3d 558, 564 (6th Cir. 2004) (holding compensation for emotional damages available under § 216(b)).

Although Greathouse sought $20,000 in damages for emotional distress, the Report recommended awarding $10,000, and Greathouse did not object to that recommendation. In recommending $10,000 in such damages, the Report reasonably explained that Greathouse had neither substantiated his distress with medical documentation nor alleged physical symptoms, and that his claims of nervousness and anguish situated his case within the lower end of the category of "garden variety" emotional distress claims, for which courts tend to award amounts

of between $5,000 and $30,000.  Report at 7–8.  Because Greathouse was threatened with a gun, "an obviously traumatic event," the Report concluded an award of $10,000, as opposed to a lower award, is justified.  *Id.* at 8–9.  Far from being clear error, this analysis is persuasive.

### C. Liquidated Damages

Greathouse seeks liquidated damages matching his back pay and emotional distress damages awards.  Section 216(b) of the FLSA provides that violators are "liable for such legal or equitable relief as may be appropriate . . . including without limitation . . . the payment of wages lost and an additional equal amount of liquidated damages."  29 U.S.C. § 216(b).  A court may, however, reduce or eliminate the liquidated damages award if the employer shows its actions were in good faith and that it had reasonable grounds to believe its act or omission was not a violation of the FLSA.  *See* 29 U.S.C. § 260.  The employer has the burden of showing such facts.  *Reich v. Southern New England Telecomm. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997).  Here, as the Report properly concluded, defendants, having defaulted, did not make the required showing to negate a claim for liquidated damages.  Report at 9.  As such, the Court agrees with the Report that Greathouse is entitled to liquidated damages in an amount equal to his back pay award, $21,450.

The Report, however, did not recommend a liquidated damages award to match the award for emotional distress.  The Report observed that § 216(b)'s text provides for liquidated damages only for back pay, and that FLSA anti-retaliation liquidated damages are meant to be compensation for losses suffered for not receiving timely pay, *see Reich*, 121 F.3d at 70 n.4.  Greathouse did not object to this construction of § 216(b), with which the Court also does not find clear error.

### D. Punitive Damages

Finally, Greathouse seeks punitive damages. As the Report noted, the FLSA does not expressly authorize imposition of punitive damages, and the Second Circuit has not yet held whether they are available under the statute. Report at 9–10. On its own review of this issue, however, the Court joins Judge Gorenstein in finding that punitive damages are available for violations of the FLSA's anti-retaliation provision.

This issue is the subject of a circuit split. *Compare Travis*, 921 F.2d at 111–12 (holding punitive damages available for FLSA retaliation claims), *with Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 934 (11th Cir. 2000) (holding punitive damages not available). The Eleventh Circuit in *Snapp* construed § 216(b)'s use of the broad term "legal . . . relief" by utilizing the interpretive canon of *ejusdem generis*; it thus read § 216(b) to contemplate only compensatory relief, precluding punitive damages. *See Snapp*, 208 F.3d at 934–35. Because § 216(a) provides only for criminal fines and imprisonment, and § 216(b) ostensibly is limited to compensatory damages, the Eleventh Circuit found no charter in § 216(b) to authorize punitive damages. *Id.* at 934–40.

As the Seventh Circuit in *Travis*—and the Report here—both recognized, however, the construction of § 216(b) as limited to compensatory damages does not comfortably follow. As originally enacted in 1938, the FLSA did not speak in terms of either compensatory or punitive damages. Instead, it provided for statutory wage and overtime compensation along with an equal amount of liquidated damages, along with attorney's fees. But, in 1977, Congress amended § 216(b) to add its broadly worded second sentence, providing for "such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an

additional equal amount as liquidated damages." *See Travis*, 921 F.2d at 111.  As the Seventh Circuit reasoned, this change "does away with the old limitations without establishing new ones." *Id.* at 112.  Critically, too, the statute as amended must be read in light of the tenet that courts "presume the availability of all appropriate remedies unless Congress has expressly indicated otherwise," *Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 66 (1992), and the background principle that "[c]ompensation for emotional distress, and punitive damages, are appropriate for intentional torts such as retaliatory discharge," *Travis*, 921 F.2d at 112.  For these reasons, the Court concludes, with the Report, that the broad language of § 216(b) encompasses punitive damages for violations of the anti-retaliation provision.

As to whether to impose punitive damages, the FLSA does not contain a standard guiding this inquiry.  The Report reasonably looked to 42 U.S.C. § 1981a(b)(1), which sets the standard for Title VII claims and which closely approximates the standard under 42 U.S.C. § 1983, as a guidepost.  *See Kolstad v. American Dental Ass'n*, 527 U.S. 526, 535–36 (1999).  This standard inquires whether the defendant acted—here, whether it retaliated—"with malice or with reckless indifference to the federally protected rights of an aggrieved individual," 42 U.S.C. § 1981a(b)(1).  On the undisputed facts, that standard is easily met here:  When Greathouse raised a valid claim of unpaid wages, JHS supervisor Wilcox threatened Greathouse with a gun and refused to pay Greathouse his long-unpaid salary.

As to the amount of punitive damages, the Report thoughtfully considered this issue, applying familiar standards.  Report at 12–16.  Whereas Greathouse sought $214,500 in punitive damages, the Report recommended awarding $10,000.  The Court finds the Report's reasoning in pruning this request to $10,000 persuasive, and finds no clear error in its assessment that such an

award is adequate both to punish the defendants for Wilcox's conduct and to deter them from similar future conduct. *Id.* at 16.

Accordingly, finding no error, let alone clear error, the Court adopts the Report in its entirety. The Court awards Greathouse $21,450 in back pay; $21,450 in liquidated damages; $10,000 for emotional distress damages; and $10,000 in punitive damages, yielding a total sum of $62,900 in damages against defendants on the retaliation claim.

## CONCLUSION

For the foregoing reasons, the Court adopts Judge Gorenstein's Report and Recommendation in its entirety. The Court will enter judgment for Greathouse in a separate order.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: August 29, 2016
       New York, New York