USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9-20-17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

DARNELL GREATHOUSE,

                Plaintiff,

-v-

JHS SECURITY INC. and MELVIN WILCOX,

                Defendants.

------------------------------------------------------------ X

11 Civ. 7845 (PAE) (GWG)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Before the Court is a Report and Recommendation (the "Report") by Magistrate Judge Gabriel W. Gorenstein on plaintiff Darnell Greathouse's motion for attorneys' fees for his claims of illegal retaliation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and New York Labor Law ("NYLL"), N.Y. Lab. Law § 190 *et seq.*

In October 2011, Greathouse complained to his supervisor, defendant Melvin Wilcox, after Greathouse was not paid for six months for his work as a security guard. Wilcox responded to this inquiry by pointing a gun at Greathouse and telling him, "I'll pay you when I feel like it." Greathouse brought this suit, seeking recovery for underpayment of his wages and for a violation of the FLSA's anti-retaliation provisions. He sued his employer, JHS Security Inc., and Wilcox. Defendants defaulted and have never appeared in this action. Judgment has been entered for Greathouse on all claims.

The sole remaining issue in this case involves the attorneys' fees and costs to be awarded to Greathouse on his retaliation claims. The Court long ago awarded damages and fees and costs for the wage and hour violations: After a damages inquest conducted by Judge Gorenstein, the

Court adopted in large part Judge Gorenstein's recommendation and awarded Greathouse $40,713.50 in damages and fees, plus prejudgment interest. *See* Dkts. 26, 28, 30–32. The Court, adopting Judge Gorenstein's recommendation, has also awarded Greathouse an additional $62,900 in damages for the violations of the FLSA's anti-retaliation provision.[1] *See* Dkts. 45–47, 49.

On September 30, 2017, Greathouse filed the instant motion for attorneys' fees and costs. *See* Dkts. 51–54. His counsel, Penn Dodson of the law firm of AndersonDodson, P.C., requests $35,000 in attorneys' fees, plus interest, and $785.62 in costs. On February 15, 2017, Judge Gorenstein issued the Report, recommending that Greathouse, on Dodson's behalf, be awarded $28,768.05 in attorneys' fees and $569.62 in costs. Dkt. 55. On March 22, 2017, Greathouse filed objections to the Report, Dkt. 58 ("Objections"), after receiving an extension of time to do so.

For the reasons set forth below, the Court adopts the Report in its entirety and awards Greathouse $28,768.05 in attorneys' fees and $569.62 in costs, plus applicable post-judgment interest.

---

[1] These awards have been resolved in separate stages because of an intervening change of law. The Court, adopting Judge Gorenstein's first Report and Recommendation, Dkt. 26, held that Greathouse could not recover damages based on his retaliation claim because the then-binding decision in *Lambert v. Genesee Hosp.*, 10 F.3d 46, 55 (2d Cir. 1993), precluded recovery by a plaintiff, such as Greathouse, who had made only informal oral complaints to a supervisor. Dkt. 30. On Greathouse's appeal of that ruling, the Second Circuit overruled *Lambert*, and remanded for reconsideration of the retaliation claim. *See Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 107 (2d Cir. 2015). It was on remand that Judge Gorenstein recommended, and the Court agreed, that Greathouse was to be awarded an additional $62,900 in damages for the violation of the anti-retaliation provisions. *See Greathouse v. JHS Sec. Inc.*, No. 11 Civ. 7845 (PAE) (GWG), 2016 WL 4523855, at *5 (S.D.N.Y. Aug. 29, 2016); Dkts. 45–47, 49.

## I. Standard of Review

After a magistrate judge has issued a Report and Recommendation, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). To accept the portions of a report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." *Acevedo v. Lempke*, No. 10 Civ. 5285 (PAE) (HBP), 2014 WL 4651904, at *3 (S.D.N.Y. Sept. 17, 2014) (quoting *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009)). When a timely and specific objection has been made, the court is obligated to review the contested issues *de novo*. *See id.*; Fed. R. Civ. P. 72(b)(3); *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998). But, when the objections simply reiterate previous arguments or make only conclusory statements, the court should review the Report and Recommendation for clear error. *Dickerson v. Conway*, No. 08 Civ. 8024 (PAE) (FM), 2013 WL 3199094, at *1 (S.D.N.Y. June 25, 2013); *see also Kirk v. Burge*, 646 F. Supp. 2d 534, 538 (S.D.N.Y. 2009) (collecting cases). Further, "[c]ourts generally do not consider new evidence raised in objections to a magistrate judge's report and recommendation." *Tavares v. City of New York*, No. 08 Civ. 3782 (PAE), 2011 WL 5877548, at *2 (S.D.N.Y. Nov. 23, 2011) (citation omitted); *see also Pan Am. World Airways v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40 n.3 (2d Cir. 1990) ("A district judge is not required to hear or rehear any witness, and Pam Am had no right to present further testimony when it offered no justification for not offering the testimony at the hearing before the magistrate.").

## II. Discussion

"Both the FLSA and the NYLL are fee-shifting statutes that entitle plaintiffs to recover reasonable attorneys' fees and costs in successfully prosecuting wage-and-hour actions."

*Hernandez v. JRPAC Inc.*, No. 14 Civ. 4176 (PAE), 2017 WL 66325, at *1 (S.D.N.Y. Jan. 6, 2017) (citing *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 595 (S.D.N.Y. 2012)); 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a)). The starting point for determining the presumptively reasonable fee award is the "lodestar" amount, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Gaia House Mezz LLC v. State Street Bank & Trust Co.*, No. 11 Civ. 3186 (TPG), 2014 WL 3955178, at *1 (S.D.N.Y. Aug. 13, 2014) (quoting *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)). The Court's analysis of the reasonable hourly rate is guided by the market rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The relevant community is this District. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190–91 (2d Cir. 2008). As to costs, fees awards "include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *Rhodes v. Davis*, No. 08 Civ. 9681 (GBD), 2015 WL 1413413, at *4 (S.D.N.Y. Mar. 23, 2015) (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)).

Applying these principles, the Report recommends that Greathouse be awarded $28,768.05 in attorneys' fees and $569.62 in costs. Greathouse seeks $35,000 in attorneys' fees and $785.62 in costs, and therefore objects to the Report's recommendations.

In the Report, Judge Gorenstein carefully evaluated Greathouse's application for fees and costs. He arrived at the recommended award by using the "lodestar" method discussed above. Although Greathouse makes more specific objections, at core, he takes issue with Judge Gorenstein's use of the lodestar method to evaluate the reasonable attorneys' fee. Greathouse's objections do not, however, justify departure from this well-established methodology, which

Judge Gorenstein thoroughly and thoughtfully applied in the Report. Whether reviewed for clear error or *de novo*, the Report is detailed and persuasive, and the Court adopts it in full.

Greathouse mainly proposes that, in lieu of the lodestar method, the Court instead "open the door to other methodologies of reasonable calculus." Objections at 1. Greathouse urges that the $35,000 attorneys' fee award he seeks be approved as a reasonable "flat fee." He urges the Court to reject the lodestar method, on grounds including that "the billable hour is no longer the market norm," *id.*, "time-based attorney fees do not track value rendered to the case," *id.* at 3, "time tracking squelches innovation," *id.* at 6, "time-based attorney fees rewards unscrupulousness (and punishes the scrupulous in the market)," *id.* at 7, "price fixing of the hourly rate?," *id.* at 8, "net effects on the judiciary," *id.* at 9, and "factors to incentivize (or not)," *id.* at 10. For these reasons, Greathouse proposes that the Court "just open the door" to new fee calculation methodologies. *Id.* at 12.

Greathouse's critiques of hourly billing rates as the sole measure of a reasonable rate are not without some force. In a particular case, premium billing above the fee set by the lodestar approach may be warranted to recognize the value added by application of a counsel's insights in a specialized area.[2] And, of course, courts in this District commonly approve contingency fee

---

[2] Greathouse offers an allegory to illustrate why the lodestar method ostensibly "structurally incentivize[s] an ethic of toiling [that] is antithetical to the swift resolution of non-class wage and hour claims." Objections at 4. In the allegory, a "giant ship engine failed," and its owners brought in numerous experts to fix it, who each failed in their attempts. The owners then summoned "an old man who had been fixing ships since he was young." This old man brought a large set of tools with him, and, after arriving at the engine room, inspected the propulsion machinery thoroughly. After his inspection, the old man procured from his tool bag only a miniature hammer. "He gently tapped something. Instantly, the engine lurched into life. He carefully put his hammer away. The engine was fixed!"

The old man later sent the owners a bill for $10,000. The owners balked at this—"he hardly did anything!"—and demanded an itemized bill. When it came, it provided the following breakdown: "Tapping with a hammer . . . $2. Knowing where to tap . . . $9,998." *Id.* at 3.

5

awards in wage-and-hour settlements, notably in certain collective actions, that represent a multiplier of the lodestar amount. Nevertheless, as Judge Gorenstein recognized, the lodestar method is an established and appropriate method used to gauge the reasonable attorneys' fee award in wage-and-hour cases. And Greathouse's challenges to this methodology do little other than to reprise the arguments he made before Judge Gorenstein in arguing against this methodology. Whether viewed *de novo* or with deference to the Report, the Court agrees with Judge Gorenstein that Greathouse's objections do not supply a convincing basis for departing from the well-accepted practice of using the lodestar as a starting point for determining, and often as the proper measure of, the reasonable attorneys' fee.

As for Greathouse's specific objections to the Report's determination of the reasonable hourly rate for counsel and of the hours for which counsel is properly compensated, the Court reviews those determinations *de novo*. As the Report observed, Greathouse's counsel, Dodson, does not specify a proffered hourly rate for her work. She states that it would be "around" $500 per hour. Judge Gorenstein instead recommended that Dodson receive $360 per hour. This determination is in line with hourly rates approved as reasonable in this District. The Report noted that previously in this case, in 2012, the Court awarded Dodson, following Judge Gorenstein's recommendation, an hourly rate of $300 per hour. Report at 9 (citing Dkt. 30 (*Greathouse v. JHS Sec. Inc.*, No. 11 Civ. 7845 (PAE) (GWG), 2012 WL 5185591, at *6 (S.D.N.Y. Oct. 19, 2012))). Here, Judge Gorenstein concluded in the Report that the rate should be increased upward to account for inflation, which he measured using a rate of 3.7% per year, and to account for the increased experience Dodson has gained since 2012. The Report thus recommended a 20% increase in the billing rate used for Dodson's time since her prior award in this case, and, as such, arrived at an hourly rate of $360.

Upon *de novo* review, the Court agrees with this rate. It accords with the caselaw, which commonly reflects approvals of hourly rates of between $300 and $400 for partners in FLSA cases. *See, e.g., Trinidad v. Pret a Manger (USA) Ltd.*, No. 12 Civ. 6094 (PAE), 2014 WL 4670870, at *9 (S.D.N.Y. Sept. 19, 2014) (collecting cases). Partners who have had rates approved by courts at the high end of this range have significant experience practicing employment law. Dodson has practiced law for over 13 years, almost exclusively in the area of employment law, pointing towards a rate towards the higher end of this range. Objections at 14; Dodson Declaration, Dkt. 54, at 1. The Court, however, cannot conclude that this case called upon specialized expertise beyond that possessed by practitioners of this experience level. While this case was the vehicle through which the Second Circuit overturned its prior precedent, *see supra* note 1, the Circuit did so on the basis of an intervening Supreme Court precedent. *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 17 (2011). The case otherwise presented no special complexity: On the contrary, given defendants' default, the case was not litigated through discovery or trial and thus did not call upon skills in those areas. The Court therefore finds that an hourly rate of $360 is appropriate for Dodson's work in this case, which is commensurate with the rates used for similarly experienced partners litigating wage-and-hour cases in this District.

Greathouse next objects to the Report's determination that the time spent by Dodson's paralegal should be compensated at a rate of $75 per hour. He argues that the paralegal's time should be compensated at approximately $137 per hour, which Greathouse states is the average paralegal billing rate in the northeast. Objections at 13–14. Greathouse claims this figure "makes sense" by supporting it with a number of calculations, essentially by dividing "the average compensation" in "[this] geographical region in 2016 [of] $59,830" by 52 weeks and 40

7

hours per week, leading to an hourly rate of compensation of $28.76. Greathouse then notes data indicating, as a general proposition, that a paralegal's compensation usually reflects only one-third of revenues collected for his or her billable work, that only 75% of a worker's time is generally billed, and, that clients typically pay only about 5/6 of the time billed to them. *Id.* Greathouse argues that these data support $137 per hour as the reasonable rate for Dodson's paralegal.

While the Court appreciates the fervor and creativity of Greathouse's arguments, the Court is unconvinced that the data he musters supply a basis to depart from the rates commonly approved in this District for similar services. Upon *de novo* review, the $75 rate recommended by the Report for the paralegal's time was reasonable. As the Report explained, this is the rate commonly awarded in this District for paralegal time spent on wage-and-hour cases. *See* Report at 10 (collecting cases); *see also Escobar v. Fresno Gourmet Deli Corp.*, No. 16 Civ. 6816 (PAE), 2016 WL 7048714, at *4 (S.D.N.Y. Dec. 2, 2016) (adopting $75 per hour for a timekeeper who undertook paralegal or legal assistant work in an FLSA case).

As such, the Court upholds the following fee calculations made in the Report. Dodson requested 77.33 hours and is awarded 77.33 hours at $360 per hour; there were 1.5 hours of travel time for which half of the time is awarded at $360 per hour; and the paralegal worked 8.79 hours and compensation for these hours is awarded at a rate of $75 per hour.[3] These hours, in total, support a fee award of $28,768.05.

As to costs, the Report determined that Greathouse is entitled to $569.62 in costs, comprising filing fees and copying and binding fees for Greathouse's appellate briefs. The

---

[3] Greathouse also sought fees for work by Dodson's associate, but the Report declined to award such fees because Greathouse did not describe the associate's qualifications or experience on wage-and-hour cases. Report at 5 n.2. Greathouse does not object to this determination, which was not clearly erroneous.

Report declined to award Greathouse $216 for the admission fee to practice before the Second Circuit because such a fee is not reimbursable; counsel is expected to come to a case qualified to litigate it. *See* Report at 11 (citation omitted). Greathouse does not otherwise object to the Report's costs award, and the Court does not find any error in it.

Greathouse also requested an interest rate of 9% on the fees and costs award from the dates of the entry of the judgments conferring a potential right to attorneys' fees. The Report correctly determined that Greathouse is not entitled to such interest because the calculation of the reasonable attorneys' fee on Greathouse's retaliation claim is based on a 2017 rate, and because, until this order, the Court had yet not made the determination that Greathouse was actually entitled to attorneys' fees on that claim. As such, the Report instead determined that Greathouse should be awarded the usual rate of post-judgment interest, calculated from the entry of judgment, which is the amount "equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System," for the week preceding the date the judgment is entered. Report at 13 (quoting 28 U.S.C. § 1961(a)). Greathouse did not object to this determination. The Court finds that it, too, is not erroneous.

Accordingly, the Court overrules Greathouse's objections to the Report. The Court adopts Judge Gorenstein's thorough and persuasive Report in its entirety.

## CONCLUSION

For the foregoing reasons, the Court adopts the Report in its entirety. The Clerk of Court is respectfully directed to enter a judgment in favor of Greathouse and against defendants JHS Security Inc. and Melvin Wilcox, payable jointly and severally, reflecting an award of $28,768.05 in attorneys' fees, $569.62 in costs, and an additional amount of post-judgment interest for these awards to be specified by the Clerk of Court.

The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 52.

The case is already closed.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: September 20, 2017
      New York, New York